(109 App. Div. 406)

ZARTMAN v. FIRST NAT. BANK OF WATERLOO.

(Supreme Court, Appellate Division, Fourth Department.   November 22, 1905.)

1. FRAUDULENT CONVEYANCES—CHATTEL MORTGAGE—CONTROL OF PROPERTY BY MORTGAGOR.

A mortgage by a corporation, reserving the power to sell the personal property and use the income in the business, and not requiring the application of the proceeds to any particular purpose, but for the use of the mortgagor, is· void as to creditors.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Fraudulent Conveyances, § 352.]

2. SAME—TRANSFER TO TRUSTEE.

That a trustee took possession of personal property under a mortgage which was invalid as to creditors because of a reservation therein of the right of the mortgagor to dispose of the property, before there were any other liens or judgments, does not affect the rights of other creditors to assail the transaction when their claims are reduced to judgment.

3. BANKRUPTCY—ACTION BY TRUSTEE IN BANKRUPTCY.

A trustee in bankruptcy has the same right to assail the validity of a chattel mortgage, on account of a provision that the mortgagor may· dispose of the property, as his judgment creditors would have.

Nash, J., dissenting.

Appeal from Special Term, Seneca County.

Action by George E. Zartman, as trustee in bankruptcy of the Waterloo Organ Company, against the First National Bank of Waterloo, N. Y. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

J. N. Hammond, for appellant.
Frederick L. Manning and George E. Zartman, for respondent.

SPRING, J.   On the 1st of December, 1894, the Waterloo Organ Company, a domestic corporation, executed its mortgage to the defendant, as trustee, designed as collateral security for an issue of 80 of its corporate bonds, each of the denomination of $500.   The mortgage covered the manufacturing plant of the organ company, including its water power, franchises, and property "acquired or which may hereafter be acquired," including all the property of every kind owned by said mortgagor.   It further provided that in case of default in the payment of the interest on any of said bonds, such default continuing for the period of 60 days, the said trustee or its successors should assume possession and control of said manufacturing plant and operate the same for said bondholders, applying the net avails of its management on the interest and thereafter ratably on the principal of said bonds.   The said mortgage contained the further covenant on the part of said mortgagor that whatever property was thereafter acquired by it should be "subject to the trusts and powers by these presents reserved, granted, declared, or created."   Said mortgage contained the condition and agreement that until default occurred in the payment of said bonds "it shall be lawful" for the said mortgagor "peaceably and quietly to have, hold, use, possess, and

enjoy the said premises with the appurtenances, and to receive the income and profits thereof to its own use and benefit without any hindrance or interruption, suit, or disturbance whatsoever, of or by the said party of the second part or its successors in trust, or any other person whatsoever, lawfully claiming the same by, from, or under the said party of the second part or its successors, or any or either of them." Said mortgage was recorded shortly after its execution, and a certain number of said bonds were issued and sold, and are now outstanding obligations of said manufacturing company secured by said mortgage. On the 21st day of January, 1899, the said company executed to said defendant trustee, as further security for said bonds, a second mortgage on its plant and property of every kind, containing the same conditions and agreements as had been embodied in the first mortgage. Said mortgage was duly recorded about the time of its execution, and on the faith of such security the remainder of said bonds, completing the amount of $40,000 originally intended, was issued and sold to various parties, and are still existing obligations, which by their terms were to mature on the 1st of December, 1904. Said mortgage contained the same covenants affecting after-acquired property as above set forth, with the right or privilege to the mortgagor to occupy said premises or property and "receive the income or profits thereof to its own use and benefit" without molestation from said trustee. The said Waterloo Organ Company did carry on said business in its own way without any interference from the defendant, and sold the manufactured product, and purchased other goods, and continued in the management of said property real and personal, and of said business as the absolute owner thereof. On Sunday, the 1st of June, 1902, the interest on the bonds fell due. The organ company was then in failing circumstances and unable to meet the interest aforesaid, and so advised the defendant trustee. The said organ company on the following day voluntarily surrendered the possession of said plant and all its property to said trustee, who at once entered into possession and control thereof and operated said business until after the appointment of the plaintiff as trustee in bankruptcy. At the time the defendant as such trustee assumed control of said business the said organ company was insolvent, with a large number of outstanding, unsecured obligations, and its property was inadequate to pay the bonded debt secured by said mortgages. A petition of the creditors in an involuntary bankruptcy proceeding was filed June 5th, and the organ company was adjudged a bankrupt on the 2d of July following, and plaintiff was duly appointed trustee of said bankrupt on the 9th of the succeeding month. Thereafter and in November, 1902, pursuant to an order of the United States District Court, said property was sold at public auction by the plaintiff and was purchased by the defendant for $25,800. It was agreed among the parties that two-fifths of said purchase price was for property of said organ company owned by it prior to the giving of the second mortgage to the defendant in January, 1899, and this sum was directed to be distributed ratably among the bondholders. It was also agreed that the three-fifths, or $15,800, of said purchase price represented the value of

property acquired by said organ company subsequently to the execution of said second mortgage and turned over to the defendant as above noted. This sum the trustee was ordered to deposit in a designated bank to await the determination of the extent of the mortgage lien, which is the controversy now pending.

We think these mortgages on the personal property are null in law as to subsequent creditors. As already observed, the mortgagor was given unrestricted dominion over this mortgaged property, or whatever was subsequently acquired. It might sell or dispose of all the personal property. It was permitted to use the income or profits of the business. It was not required to expend these avails in keeping the stock good, nor for the development of the business, or in its management in any way, but to the "use and benefit" of said mortgagor, precisely the same as if no lien existed. This infirmity vitiated the mortgage in law as to creditors of the mortgagor. Hangen v. Hachemeister, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691; Southard v. Benner et al., 72 N. Y. 424; Reynolds v. Ellis et al. 103 N. Y. 115, 8 N. E. 392, 57 Am. Rep. 701; Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678; Robinson v. Elliott, 89 U. S. 513, 22 L. Ed. 758. In re Marine Construction & Dry Dock Co., 14 Am. Bankr. Rep. 466, 135 Fed. 921. In the light of the facts and circumstances enumerated the lien of the mortgage did not attach to the personal property acquired after the execution of the mortgage. Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635; Deeley v. Dwight, 132 N. Y. 59, 30 N. E. 258, 18 L. R. A. 298.

There are a number of cases relied upon by appellant's counsel, like McCaffrey v. Woodin, 65 N. Y. 459, 22 Am. Rep. 644, Wisner v. Ocumpaugh, 71 N. Y. 113, and Kribbs v. Alford, 120 N. Y. 519, 24 N. E. 811; but we think they are clearly distinguishable from the present case, and do not impair the effect of the authorities referred to. So far as I have been able to discover, each of these cases is founded upon the rights of the parties to the agreement. As between the organ company, the trustee, and the bondholders, who parted with their money for the benefit of the mortgagor, the courts would uphold the mortgages. Even if there had been any vice in the original agreements, equity would establish the lien of the mortgages; but, when the rights of the creditors have intervened, a different question is presented, and the distinction is recognized in each of the cases cited. It has also been held that, where the mortgagor was permitted to sell the mortgaged goods at retail and apply the avails in reduction of the mortgage indebtedness, the permission did not vitiate the instrument, even though creditors were attacking the transaction. Brackett v. Harvey, 91 N. Y. 214. In the present case there was no such limitation upon the use of the income or of the avails of the sales made by the organ company, and that is the nub of their difference.

It is urged, however, that, inasmuch as the defendant acquired possession and dominion over the property before any levy was made or judgment was obtained, equity will sustain the validity of the lien. The defendant, representing the bondholders, was responsible

for the agreement which permitted the organ company to sell and dispose of the property without restriction, and to use the income and profits like any owner. The defendant allowed this plenary authority to continue undiminished until the company became insolvent and until other creditors were pressing for their pay. Then it asserted its ownership to all the property to the exclusion of these unsecured creditors. There is no reason for equitable interference to aid the defendant in retaining this property, when its own remissness has operated to the disadvantage of other creditors. Equity is often invoked to aid a just claim, though technically invalid, but not in a case of this kind. In N. Y. Security Co. v. Saratoga Gas & Electric Light Co., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132, the defendant had executed to a trust company a mortgage of $300,000 to secure a bond issue. The mortgage covered all the corporate property, real and personal, including whatever was thereafter acquired, together with income and profits. The gas company, however, was to retain possession and control of all the property until default, with the right to "receive and use the earnings, income, and profits thereof in any manner not inconsistent with these presents nor tending to lessen the security hereby provided." In the event of default for the period of 60 days, the trustee might assume possession and management of the property. The conditions were therefore quite analogous to those contained in the mortgages we are considering. A default occurred. Foreclosure was commenced, and, pending the action, a receiver was appointed and took possession of the property. On the same day a sequestration creditor secured the appointment of a receiver. The receiver in the foreclosure action took into his custody $4,000 in money and notes, which were earnings of the corporation after the execution of the mortgage and prior to the commencement of the action. The receiver of the creditor by an action in equity asserted title to this money for distribution among the general creditors, and the Court of Appeals sustained the claim. The court, after holding that the right of the mortgagor to deal with the earnings as its own was incompatible with the existence of any lien upon the further products, continued as follows:

"Where a mortgage by a corporation to secure the payment of the principal and interest of its bonds, such as this is, is made, although in terms purporting to include future earnings and products, it does not, as against general creditors, operate as a lien upon such earnings until actual entry and possession under the mortgage by the mortgagee. This results from the stipulation in the instrument that until default the mortgagor shall have the use of the earnings in the conduct of its business, and that upon default the mortgagee may go into possession, exercise the corporate franchises, and appropriate the earnings to the payment of the debt secured by the mortgage. The right of the mortgagor, in the meantime, to the use of the earnings, amounts practically to absolute ownership, and hence the mortgage cannot operate as a lien upon such earnings, to the prejudice of the general creditors, until actual entry and possession taken, and then only upon what is earned after that time. The lien of the mortgage upon future earnings is consummated as against other creditors only by the fact of the possession of the property, and cannot have any retroactive operation, since it would then deprive the unsecured creditor of the fund upon the faith of which he may have given credit to the mortgagor during the time when the latter was permitted to deal with and use it as his own. The lien upon the earnings, in favor of the bondholders,

attaches only upon what is earned after the time when the lien is perfected by entry and possession."

There can be no distinction whether the earnings or income were in money or in notes, or had been invested by the mortgagor in pianos, organs, or other personal property. The vice in the mortgage in each case is the power committed to the mortgagor in possession to dispose of the property and use the avails, and also the income, without hindrance, and which is not consistent with the continuation of the mortgage as a security for a debt upon property that the mortgagor happened to purchase out of the avails of the business. The organ company might use the income in its business. It might invest it in stocks or bonds. It might expend the same in the living expenses of its officers. The point is the manner of the expenditure was left with the company, and was too uncertain to justify the existence of tangible property for the lien to pursue and fasten upon.

There were no liens or judgments when the trustee took possession of the property, and it is urged that consequently the rights of creditors had not intervened in a legal way, and that equity will establish the lien on all the property of the company which was surrendered to the defendant. A creditor at large could not assail the transaction until his demand was reduced to judgment, but when that was accomplished the judgment creditor could maintain the action. Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678; Stephens v. Perrine et al., 143 N. Y. 476, 39 N. E.. 11; Brunnemer v. Cook & Bernheimer Co., 180 N. Y. 188, 73 N. E. 19. If the converse of this proposition obtained, the mortgagee named in the mortgage containing vicious provisions of the kind in the instruments under review would always be enabled to obtain possession and dominion over the property before the general creditors could get their claims into judgments. The case of Thompson v. Fairbanks (U. S.) 25 Sup. Ct. 306, 49 L. Ed. 577, cited by the appellant's counsel, does not militate against these propositions. In that case there was a mortgage on the horses and the personal property of a livery stable executed in the state of Vermont covering after-acquired property. During the existence of the mortgage lien the mortgagee exchanged most of the horses for others, made sales, and changed and replaced the stock. There was a breach of the conditions of the mortgage lien, and the mortgagee took possession of all the property, the greater part of which had been acquired subsequent to the giving of the mortgage. The trustee in bankruptcy sued the mortgagee to recover the value of this property. There was no claim of fraud, although the defendant knew of the insolvency of the bankrupt when he assumed possession. It appears that in the state of Vermont a mortgage on after-acquired property is valid; further, that when a mortgagee takes possession of personal property pursuant to his mortgage, where the mortgagor has been allowed to sell and dispose of the same without reservation, the lien is "valid against every one but attaching or judgment creditors prior to the taking of such possession." The United States Supreme Court affirmed the judgment for the defendant, on the specific ground that the law prevailing in the state of Vermont controlled its decision, saying at page 308 of 25 Sup. Ct. (49 L. Ed. 577): "Whether and to what extent a

mortgage of this kind is valid is a local question, and the decisions of the state court will be followed by this court in such case"—and citing Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457. If the law in this state coincided with that in the state of Vermont, the authority would be decisive; but, as we have concluded otherwise, the case is not applicable.

We also think that the plaintiff, as trustee in bankruptcy, was authorized to maintain this action, although the claim was not in judgment. Brunnemer v. Cook & Bernheimer Co., 180 N. Y. 188, 73 N. E. 19; Southard v. Brenner et al., 72 N. Y. 424. He became vested by the order of appointment of all the property of every kind owned by the bankrupt, and, while it passed to him subject to the liens valid against the organ company, he still represented the creditors, and could pursue remedies available to them as judgment creditors. In re Garcewich, 8 Am. Bankr. Rep. 149; Section 70, subds. "a," "e," Bankr. Act July 1, 1898, c. 541, 30 Stat. 565, 566 [U. S. Comp. St. 1901, pp. 3451, 3452]. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except NASH, J., who dissents.