GEORGE E. ZARTMAN, as Trustee in Bankruptcy of WATERLOO ORGAN COMPANY, Respondent, *v.* THE FIRST NATIONAL BANK OF WATERLOO, Appellant.

MORTGAGE — LIEN AS TO AFTER-ACQUIRED PROPERTY, AS AGAINST A TRUSTEE IN BANKRUPTCY. A mortgage given by a manufacturing corporation upon all its property, real and personal, to secure its negotiable bonds, with the right of possession and enjoyment in the mortgagor for its own use and benefit until default, although it contains a clause purporting in terms to cover after-acquired personal property, is not good as against a trustee in bankruptcy, as to shifting stock and material on hand when possession was taken by the mortgagee pursuant to the provisions of the mortgage, one day after default in the payment of interest and three days before the commencement of bankruptcy proceedings against the mortgagor.

*Zartman* v. *First Nat. Bank,* 109 App. Div. 406, affirmed.

(Argued June 14, 1907; decided October 8, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 27, 1905, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at an Equity Term.

The object of this action was to determine the rights of the parties to a fund realized from a sale in bankruptcy of the property of the Waterloo Organ Company, a manufacturing corporation formerly carrying on the business of making and selling organs, pianos and other musical instruments in the village of Waterloo. All the property of the company, both real and personal, was sold in one parcel, free from liens, by order of the United States District Court, and the value of such chattels included therein as were acquired by the company after it had given a corporate mortgage to secure its bonds issued and negotiated in the usual way, was the sum of $15,480. The judgment directed in favor of the plaintiff consisted mainly of that sum and there is no controversy over any other item. Upon appeal to the Appellate Division the judgment was affirmed, one of the justices dissenting, and the defendant appealed to this court.

*Adelbert Moot, William L. Marcy* and *Helen Z. M. Rodgers* for appellant. The trust mortgage was not void as to after-acquired personal property, but was at most inchoate until entry was made and possession taken by the mortgage trustee. (*N. Y. S. Co.* v. *S. G. & E. L. Co.*, 159 N. Y. 137; *Platt* v. *N. Y. & S. B. Ry. Co.*, 170 N. Y. 451; *C. T. Co.* v. *W. I. I. Co.*, 169 N. Y. 314; *W. T. Co.* v. *M. I. Works*, 187 N. Y. 307; *Skilton* v. *Codington*, 185 N. Y. 80; *U. T. Co.* v. *Morrison*, 125 U. S. 591.) The entry and possession of the trustee related back to the date of the mortgage pursuant to which it was made, and hence was not an unlawful preference within the Bankrupt Act. (*Thompson* v. *Fairbanks*, 196 U. S. 516; *Matter of Nat. Valve Co.*, 140 Fed. Rep. 679; *Fisher* v. *Zollinger*, 149 Fed. Rep. 54; *Wood* v. *U. S. F. & G. Co.*, 143 Fed. Rep. 424.) The mortgages in question created valid liens upon the after-acquired personalty, including product, materials and supplies, which, though inchoate, until the delivery of possession to the mortgage trustee, were thereafter binding as against all the world, and related back to the date of the execution of the instruments. (L. 1897, ch. 418, § 91.)

*George E. Zartman,* in person, and *Frederick L. Manning* for respondent. The Appellate Division correctly overruled the exception of appellant to the conclusion of law that so much of the proceeds of the sale as represented the after-acquired personal property is not subject to the lien of the mortgages held by defendant, or to the lien of either of them. (*Deeley* v. *Dwight*, 132 N. Y. 59; *N. Y. S. & T. Co.* v. *S. G. & E. Co.*, 159 N. Y. 137; *Platt* v. *N. Y. & S. B. R. R. Co.*, 170 N. Y. 451; *Southard* v. *Benner*, 72 N. Y. 424; *Reynolds* v. *Ellis*, 103 N. Y. 115; *Edmonson* v. *Hyde*, 2 Saw. 205; *Matter of Werner*, 5 Dill. 119; *Skillon* v. *Endelman*, 39 Misc. Rep. 261; *Matter of Garcewich*, 8 Am. B. Reg. 149; *Mandeville* v. *Avery*, 124 N. Y. 376.) The possession taken of said property by the mortgagee was not authorized by the terms of the mortgage. (*Butler* v. *Duprat*, 19 J. &

S. 77.) The contention of appellant that the possession pursuant to the agreement contained in the mortgage before any creditor had obtained a lien, gave the defendant a vested right which cannot be disturbed, cannot be maintained. (*N. Y. S. Co.* v. *S. G. Co.*, 159 N. Y. 145; *Van Hassel* v. *Borden*, 1 Hilt. 128; *Mandeville* v. *Avery*, 124 N. Y. 376; *Stephens* v. *Perrine*, 143 N. Y. 476; *Brunnemer* v. *C. & B. Co.*, 180 N. Y. 188; *Russell* v. *St. Mart*, 180 N. Y. 355; *Matter of A. S. D. Co.*, 10 Am. B. Reg. 359.)

Vann, J. The question presented by this appeal is whether, in a mortgage given by a manufacturing corporation upon all its property, real and personal, to secure its negotiable bonds with the right of possession and enjoyment in the mortgagor for its own use and benefit until default, a clause, purporting in terms to cover after-acquired personal property, is good as to shifting stock and material on hand when possession was taken by the mortgagee pursuant to the provisions of the mortgage, one day after default in the payment of interest and three days before the commencement of bankruptcy proceedings against the mortgagor, as to the trustee in bankruptcy subsequently appointed therein?

The facts raising the question are stated so fully in the opinion below as to make it unnecessary to repeat them here. (109 App. Div. 406.)

To the extent that the mortgage covered personal property it was a chattel mortgage, but as it was executed by a corporation to secure the payment of its bonds and was duly recorded as a mortgage of real property, according to the provisions of the Lien Law, there was no necessity for filing or refiling it as a chattel mortgage. (L. 1897, ch. 418, § 91.) No question is raised as to the lien of the mortgage upon machinery, tools and appliances belonging to the manufacturing plant, for the controversy is confined to musical instruments on hand, finished and unfinished, and materials from which other instruments might be made.

The learned counsel for the appellant, in an able argument,

contended that while the mortgage did not create an absolute lien upon stock and materials acquired after its date, it operated as an executory contract to deliver possession upon default and to place the property as it then existed under the lien of the mortgage. He conceded that property of this nature is subject to seizure on execution by unsecured creditors during the period while it is subject to the disposal of the mortgagor and until the trustee pursuant to the mortgage takes possession of it, but insisted that the act of taking possession ripens the lien of the mortgage and makes it absolute as against general creditors or those with no prior lien.

The mortgage provided that "until default shall be made in the payment of the interest or principal of the said bonds or some of them  \*  \*  \* it shall be lawful for the said party of the first part and its successors peaceably and quietly to have, hold, use, possess and enjoy the said premises and property, with the appurtenances, and to receive the income and profits thereof to its own use and benefit without hindrance or interruption" from the mortgagee or its successors. This clause gave the mortgagor power to sell for its own benefit all materials and products until the trustee took possession after default in the payment of interest. No limitation is placed by the mortgage upon the use to be made of the proceeds derived from the sale of the stock and materials. As was said by the learned justice who wrote for the Appellate Division: "The mortgagor was given unrestricted dominion over this mortgaged property or whatever was subsequently acquired. It might sell or dispose of all the personal property. It was permitted to use the income or profits of the business. It was not required to expend these avails in keeping the stock good, nor for the development of the business or in its management in any way," but could use them for its own benefit "precisely the same as if no lien existed." Conceding that the right of the mortgagor to receive the profits to its own use means a proper and legitimate corporate use, still the use permitted was independent of the mortgage or any lien supposed to be created thereby.

As was said in a case upon which both parties rely : "The right of the mortgagor in the meantime," that is, until default, "to the use of the earnings, amounts, practically, to absolute ownership, and hence the mortgage cannot operate as a lien upon such earnings to the prejudice of the general creditors until actual entry and possession taken, *and then only upon what is earned after that time.* The lien of the mortgage upon future earnings is consummated as against other creditors only by the fact of the possession of the property, and cannot have any retroactive operation, since it would then deprive the unsecured creditor of the fund, upon the faith of which he may have given credit to the mortgagor during the time when the latter was permitted to deal with and use it as its own. The lien upon the earnings, in favor of the bondholders, attaches only upon what is earned after the time when the lien is perfected by entry and possession." (*N. Y. Security & Trust Co.* v. *Saratoga Gas & El. L. Co.*, 159 N. Y. 137, 14 )

If a lien was created by the mortgage upon property in existence at its date, possession after it came into existence was of no importance. If no lien was created by the mortgage upon such property, the taking of possession pursuant to its terms did not create one as against general creditors are presumed to have dealt with the mortgagor in relation upon its absolute ownership of the stock on hand. While the record of the mortgage was notice to all, it was      f all its terms, which included the right of disposition      use and benefit of the mortgagor, with no duty to apply the avails upon the mortgage indebtedness. If the question had arisen between the parties to the mortgage, equity might recognize a contract to give a lien and treat it as an actual lien, but it arises between the mortgagee and the general, unsecured creditors, who had little, if anything, to rely upon except the shifting stock, which, directly or indirectly, they themselves had furnished. The credit extended by them enabled the mortgagor to carry on business, and if the product of that credit goes to the mortgagee, not only are they helpless, but,

if the law is so declared, hereafter manufacturing corporations needing credit will be helpless also.  If it is understood that a corporate mortgage given by a manufacturing corporation may take everything except accounts and debts, such corporations, with a mortgage outstanding, will have to do business on a cash basis or cease to do business altogether.  Assuming that a court of equity may uphold and give effect to such a mortgage when the rights of the mortgagor and mortgagee only are involved, it will not aid the mortgagee at the expense of subsequent creditors when their rights are involved.  It will not treat a contract to give a mortgage upon a subject to come into existence in the future as a mortgage actually then given, if the result would deprive the general creditors with superior equities so far as after-acquired property is concerned, of their only chance to collect debts.  It is only when the rights of third parties will not be prejudiced that equity, treating as done that which was agreed to be done, will turn a contract to give a mortgage on property to be acquired into an equitable mortgage on such property as fast as it is acquired and force the same accordingly against the mortgagor, his representatives and assigns.  In other words, the agreement and intention of the parties to a mortgage upon property not yet in existence will be given effect by a court of equity so far as practicable, provided no interest is affected except that of the mortgagor and mortgagee, who entered into the stipulation, but closes its doors and refuses relief if the interests of creditors are involved.  The result thus announced is founded on principle and sanctioned by authority.  (*Kribbs* v. *Alford*, 120 N. Y. 519, 524; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113; *McCaffrey* v. *Woodin*, 65 N. Y. 459; Jones on Chattel Mortgages [4th ed.], 170; *Beall* v. *White*, 94 U. S. 382, 386.)

Was the alleged lien good at law? The authorities cited by both parties show that it was not for two reasons: *First*, because a man cannot grant what he does not own, actually or potentially.  *Qui non habet, ille non dat.* (*Rochester Distilling Co.* v. *Rasey*, 142 N. Y. 570; *Deeley* v. *Dwight*,

132 N. Y. 59; *N. Y. Security & Trust Co.* v. *Saratoga Gas & El. L. Co.*, 159 N. Y. 137; *Gardner* v. *McEwen*, 19 N. Y. 123; *Andrews* v. *Durant*, 11 N. Y. 35; *Farmers' Loan & Trust Co.* v. *Long Beach Imp. Co.*, 27 Hun, 89; Jones on Chattel Mortgages [4th ed.], § 138; Thomas on Chattel Mortgages, § 137; Thompson on Corporations, § 6141; 6 Cyc. 1041.)

*Second*, because an agreement permitting the mortgagor to sell for his own benefit renders the mortgage fraudulent as matter of law as to the creditors represented by the plaintiff. (*Skilton* v. *Codington*, 185 N. Y. 80, 90; *Mandeville* v. *Avery*, 124 N. Y. 376; *Hangen* v. *Hachemeister*, 114 N. Y. 566; *Potts* v. *Hart*, 99 N. Y. 168; *Southard* v. *Benner*, 72 N. Y. 424.)

In reading the authorities it is important to observe how, where and between whom the question arose, for the remarks of learned judges in discussing the rights of the mortgagor and mortgagee are not in point when the question relates to the rights of third persons as against either or both of the parties to the mortgage. Nor are they in point when, as in *Thompson* v. *Fairbanks* (196 U. S. 516, 522) the Federal courts feel bound to follow the decisions of the state courts as to local questions and the law of the state where the case arose differs from that of the state of New York. (*Dooley* v. *Pease*, 180 U. S. 126.)

· As we have seen, equity takes hold of the subject with a strong hand in order to enable the mortgagee to get what the mortgagor intended to give, provided no other interest is involved, but when the creditors of the mortgagor enter the field equity goes no farther than the law and will simply enforce a lien if it exists without attempting to perfect it if something is lacking to make it complete. The taking of possession by the mortgagee is relied upon by the appellant to " ripen the lien," which, as is conceded, was inchoate before. If the contract between the mortgagor and mortgagee fell short of creating a lien, as was clearly the case, the act of taking possession did not enlarge, perfect or complete it. A

18

mortgagee cannot add to his title by his own act. (*Stephens v. Perrine*, 143 N. Y. 476.) The defendant did not have title to the after-acquired property when it took possession. All it had, as the courts hold, was the promise of the mortgagor to give title as the property came into existence. The mortgagor did not keep its promise by giving supplementary mortgages as pianos were made or materials were purchased, or in any other way. If it had, creditors would have been warned and could have avoided the danger. Time passed and insolvency overwhelmed the mortgagor, when it was too late to give additional mortgages owing to the Bankruptcy Act. The plaintiff, as trustee in bankruptcy of the mortgagor, has the same rights as a creditor armed with an attachment or execution. (*Skilton* v. *Codington, supra; In re Werner*, 5 Dill. 119; *In re Garcewich*, 8 Am. Bank Rep. 149; U. S. Bankruptcy Act of 1898, § 70.) When the general creditors intervened through the plaintiff, the mortgagee was simply in possession with title to the property that was in existence when the mortgage was given, but with no title to the shifting stock subsequently acquired. As to that property, it had only the promise of the mortgagor, which equity could help out by treating as done what was agreed to be done, but which it will not help out to the injury of unsecured creditors. The rights of the defendant, incomplete when it took possession, are incomplete still, for they can be perfected only by the aid of equity, and equity refuses to help under the circumstances of this case.

The judgment awarding the proceeds of the after-acquired property to the plaintiff was, therefore, properly rendered, and the action of the courts below should be sustained. The elaborate opinions written both at Special Term and in the Appellate Division make further discussion unnecessary.

The judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT and WERNER, JJ., concur; HISCOCK, J., not sitting.

Judgment affirmed.