(80 Misc. Rep. 404.)

NEWMAN v. PEYSER, City Marshal, et al.

(Supreme Court, Appellate Term, First Department. April 16, 1913.)

1. CHATTEL MORTGAGES (§ 188*)—VALIDITY.

    A chattel mortgage upon a stock of goods, providing that the mortgagor would replace any portion of the fixtures or other stock with stock of equal value from time to time as it may be sold, is absolutely void and fraudulent.

    [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188.*]

2. CHATTEL MORTGAGES (§ 198*)—RIGHTS OF MORTGAGEE—POSSESSION.

    Where a chattel mortgage was void and fraudulent as to the mortgagor's creditors, that the mortgagee took possession of the property would not give her any priority over other creditors.

    [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 442–449; Dec. Dig. § 198.*]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by Dora Newman against Simon Peyser, as Marshal of the City of New York, and the Waterman Building Company. From a judgment for plaintiff, defendants appeal. Reversed, and complaint dismissed.

See, also, 132 N. Y. Supp. 312.

Argued March Term, 1913, before LEHMAN, GERARD, and DELANY, JJ.

Walter B. Raymond, of New York City, for appellants.
Louis Hanneman, of New York City, for respondent.

GERARD, J. This action was brought by plaintiff, Dora Newman, who claimed to be the mortgagee under a certain alleged chattel mortgage, against the defendant Simon Peyser, a marshal of the city of New York, and the Waterman Building Company, to recover damages alleged to have been sustained by reason of the levy and seizure of certain chattels by the defendant Peyser under a warrant of attachment issued out of the Municipal Court of the City of New York, First District, in an action wherein the defendant the Waterman Building Company was plaintiff and one Samuel B. Rose was defendant. In the action brought by the Waterman Company against Rose, the Waterman Company had obtained a warrant of attachment against the property of Rose, and under this warrant of attachment a levy was made upon certain property. This property the plaintiff, Newman, claims under a certain chattel mortgage executed by Rose to her and under a certain letter written to her by Rose.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] The chattel mortgage is in the usual form, except that it contains the following clause:

"The party of the first part agrees to replace any portion of pictures, paintings, or other stock with stock of equal value from time to time as the same may be sold.".

This chattel mortgage further provides that no title, ownership, or right in or to the possession of the mortgaged chattels should vest in plaintiff, Newman, the mortgagee, until default in payment of the sum of $1,000 on February 9, 1912. It is alleged in the complaint that the plaintiff actually took physical possession of the said property on the 24th of April, 1911. Plaintiff took possession under a letter written to her by the mortgagor, Rose, which was as follows:

"My Dear Miss Newman:

"It is impossible for me to make my business go. I am compelled to close on the 1st day of May. I have been unable to obtain a lease, and, even if I had, I could not make ends meet. So I thought it best to notify you, in order to protect your mortgage, to take possession of the business, and under your mortgage sell the goods at public auction. You will thereby protect the money you have advanced to me, and the surplus you can turn over to the creditors who are not protected by a mortgage."

Appellants urge that the alleged chattel mortgage is absolutely void and fraudulent, because of the clause in the mortgage itself which permitted the mortgagor to sell stock from time to time, although he agreed to replace any stock sold with stock of equal value. In Edgell v. Hart, 9 N. Y. 213, 59 Am. Dec. 532, the court stated the instrument there under consideration to be as follows:

"Interpreting the instrument in this manner, the scope of the written arrangement between the parties was that Bostwick should carry on a retail store, making purchases from time to time and selling off in the ordinary manner; the plaintiff all the time retaining a lien on the whole stock by way of mortgage, under which he could, upon a default, take possession of the remaining goods, whether they were those owned by Bostwick at the giving of the mortgage or purchased subsequently, and sell them for the payment of his debt."

The court then said:

"They made this precise bargain in writing, and the question is whether by law such an arrangement is void as against creditors."

And the court held there that a mortgage is an executed conveyance subject to a condition, and has all the elements of a sale, and that, like a sale, it requires a subject in esse and in the power of the mortgagor, and the court held that the mortgage was invalid, as in its terms fraudulent against creditors.

In the later case of Brackett v. Harvey, 91 N. Y. 214, the court apparently held that a chattel mortgage is not void as against creditors by reason of a provision authorizing the mortgagee to sell the mortgaged property and apply the proceeds of sales towards the payment of the mortgaged debt, and that permission to use a portion of the proceeds of sales to purchase other property does not vitiate the mortgage, where it is coupled with a condition that the property so purchased shall be brought in and subjected to the mortgage lien by a renewal of the mortgage. But in Skilton v. Codington, 185 N.

Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, the Brackett Case is criticised:

"The plaintiff contends that under the authority of the Brackett Case the agreement that plaintiff should apply the proceeds of the sales of the mortgaged chattels to the purchase of other goods did not render the mortgage void. I do not think the decision goes to that extent. The agreement in that case was a peculiar one. While it did provide for the application of the proceeds of sales to new purchases, it also provided that new mortgages should be given from time to time on the chattels subsequently purchased. Such new mortgages were in fact given, and it was the validity of these later mortgages that was impeached in the suit then before the court. As was pointed out in the opinion, when these mortgages were given the mortgagee was a creditor of the mortgagor, whatever may have been the misapplication of the proceeds of sales under the earlier mortgages, and the parties had the right to contract on the then existing status, because there was no creditor in a position to question the validity of the contract. In the course of the discussion it was said that it was, perhaps, a just inference from the contract between the parties that the mortgagor might sell and apply the proceeds towards new purchases, on condition that the substituted property should be brought in and subjected to the mortgage; that this did not injuriously affect the rights of creditors, as the substituted property would represent the property sold; and that, therefore, it was not necessary to hold the agreement fraudulent. This statement was not necessary to the disposition of the cause, and I am frank to say that I should be loath to accede to it in its entirety. The substituted property might or might not equal in value the property realized from the lien of the mortgage by sale. Even in the most favorable view, it would give the mortgagor unlimited power of speculation in the disposition of the mortgaged property. The property might be wasted by ill-judged speculation, even though the mortgagor acted in good faith."

In the Skilton Case the mortgage went further than the mortgage in the case at bar, because it authorized the mortgagor to deduct from the sales money necessary for the expenses of the business, and then apply the balance either to the payment of the mortgaged debt or to increase the stock of goods, and that on that ground the mortgage was fraudulent and void. But it seems to me, taking the language of Judge Cullen in his criticism of the Brackett Case, together with the earlier decision in Edgell v. Hart, that the mortgage at bar is void because of the provision which in effect permits the mortgagor to sell any part of the stock, although coupled with a promise on his part to replace any stock sold with stock of equal value.

[2] The fact that the plaintiff in this action had taken possession of the property under the letter written to her by Rose would in no wise affect her rights, as was said in Zartman v. First National Bank, 189 N. Y. 267, at page 271, 82 N. E. 127, at page 128 (12 L. R. A. [N. S.] 1083):

"If no lien was created by the mortgage upon such property, the taking of possession pursuant to its terms did not create one as against general creditors, who are presumed to have dealt with the mortgagor in reliance upon its absolute ownership of the stock on hand."

If the mortgage in the case at bar was void and fraudulent by its terms as against creditors, the fact that plaintiff took possession of the goods can in no wise help her. As was said in the same case:

"If the contract between the mortgagor and mortgagee fell short of creating a lien, as was clearly the case, the act of taking possession did not

enlarge, perfect, or complete it. A mortgagee cannot add to his title by his own act."

The mortgage in the case at bar was fraudulent and void, and the complaint should have been dismissed.

Judgment reversed, with costs, and complaint dismissed, with costs. All concur.