### In re PURTELL.

(District Court, N. D. New York. July 22, 1914.)

BANKRUPTCY (§ 184*)—MORTGAGE ON MERCHANDISE—FRAUD—RIGHTS OF CREDITORS.

 Where a bankrupt executed a chattel mortgage on a stock of merchandise to secure payment of a part of the purchase price to the seller, and there was no delivery of possession to the mortgagee, and the mortgage expressly gave permission to the mortgagor to sell the mortgaged property, but the mortgage contained nothing requiring the bankrupt to apply the proceeds of sales from the stock to the payment of the mortgage debt or to the purchase of new stock to replenish or increase the mortgaged goods, the mortgage was fraudulent as to the mortgagor's creditors and unenforceable in favor of the mortgagee against the mortgagor's trustee in bankruptcy.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In Bankruptcy. In the matter of bankruptcy proceedings of William P. Purtell. Application for a confirmation of the report of a special master holding a certain chattel mortgage given by the bankrupt to one Lillian Meeker invalid as against the bankrupt's trustee. Affirmed.

Hinman, Howard & Kattell, of Binghamton, N. Y., for Lillian Meeker, mortgagee.

T. B. & L. M. Merchant, of Binghamton, N. Y., for trustee.

RAY, District Judge. Prior to January 23, 1913, Lillian Meeker, the mortgagee, was the owner of a stock of groceries, provisions, furnishings, fixtures, etc., in a store situated in the village of Union, Broome county, N. Y. On or about December 15, 1912, she made an agreement in writing with William P. Purtell, now bankrupt, whereby

she agreed to sell the said property to said Purtell for the sum of $1,-000 cash. Fifty dollars was paid down by Purtell, and the agreement was that the balance should be paid on or about January 1, 1913. Lillian Meeker continued in charge of the store making sales and turning over the proceeds to Purtell and buying stock and supplies to replenish the stock in the store. This condition continued until on or about the 1st day of January, 1913, when Purtell paid $300 to Lillian Meeker to apply on the purchase price of the stock. At that time Purtell was given a receipt for the $300 and one of the two keys of the store. From that time on he had the complete possession of the store and the goods therein, except that Lillian Meeker held the other key down to the time the chattel mortgage was given. At the time the $300 was paid and the possession turned over as above stated to Purtell, he stated that he would pay the balance of the purchase price in cash in a few days. On or about January 8th, Purtell stated to Lillian Meeker that he had been unable to get the money, but that he would pay the balance from time to time in sums of $50 or more as he could get it.

On or about the 23d day of January, 1913, and at the time the chattel mortgage was executed, Mrs. Meeker requested Purtell to fix up a paper for her protection, and they went to an attorney at law where the mortgage in question signed by both parties was drawn up and executed. The mortgage is for the sum of $650 and interest. It was duly filed January 25, 1913. At the time of the payment of the $50 to apply on the purchase price of the stock and fixtures Purtell paid to one C. W. Meeker $15 as one month's rent of the store being for the month of January, 1913. After the giving of the said chattel mortgage, Purtell continued the business until on or about May 7, 1913, and during that time he made regular sales of merchandise in carrying on the business and also purchased stock for the business. The old stock remaining unsold can be and has been separated from the new stock purchased by Purtell.

There is no evidence of any agreement by Purtell to turn over the proceeds of the sales made by him to Mrs. Meeker, and there is no claim that he did turn over any of such proceeds.

The chattel mortgage executed as aforesaid recites the sale of the stock of goods and fixtures by Mrs. Meeker to Purtell and that $650 of the purchase price remains unpaid. It also recites that Purtell is desirous of giving the second party a lien upon said stock of goods and fixtures as security for the payment of said sum of $650 in the manner hereinafter stated. This refers to the entire stock of goods as it then existed. The chattel mortgage then proceeds as follows:

"Whereas, the said party of the first part has and hereby does agree to pay to party of the second part the said sum of $650.00 with interest thereon, as follows: The whole amount thereof to be paid within one year from the date hereof. With the privilege to first party to pay $25.00 or more thereon at any time during that period, and upon the payment of which, and the performance of the conditions herein contained to be performed on the part of the party of the first part, this obligation shall become null, inoperative, void and of no effect, otherwise to remain in full force and effect: Now this agreement witnesseth, that as security for the payment of the said sum, and of the performance of the conditions herein mentioned, and for the purpose of creating

a lien upon the property hereinafter mentioned and party of the first part has and hereby does sell and transfer to the party of the second part all of the stock of goods and merchandise and all the fixtures owned by first part in the store conducted by first party on the south side of Main street in the village of Union, N. Y., purchased of second party; the intention being that said lien shall be a continuing security and lien; that the first party shall have the right to sell the goods and merchandise above mentioned in the ordinary course of mercantile business the same as though this lien had not been given; but that he shall at all times keep said stock good, that is, that he shall, as nearly as possible, keep the stock of goods up to its present standard, as to quantity and quality, and that this obligation shall remain and be a lien upon any and all goods and merchandise that first party may put in said store in the place of goods sold or otherwise, and all fixtures installed by him in connection with said business, until such time as this obligation is paid as aforesaid. And the party of the first part covenants that he is the owner of said property and has the right to mortgage the same and that the same is free from all liens and incumbrances and are situate at the said store in the village of Union, N. Y."

The chattel mortgage then contained the usual clause for taking possession in case of default and power of sale, etc.

The trustee in bankruptcy contends, and the special master so found, that the provision contained in the chattel mortgage that Purtell shall have the right to sell the goods and merchandise in the ordinary course of mercantile business the same as though the mortgage had not been given, but that he should at all times keep the said stock good, up to its present standard as to quality and quantity, and that the instrument should remain and be a lien upon any and all goods and merchandise that the first party may put in said store in the place of goods sold or otherwise and all fixtures put in the store in connection with the business makes the mortgage as to creditors and the trustee in bankruptcy null and void as being in fraud of creditors in view of the chattel mortgage law of the state of New York.

It will be noted that there is no provision whatever for turning over the proceeds of the sales made by Purtell to Mrs. Meeker, or for using the proceeds of such sales to replenish and keep up the stock, or for a renewal of the lien by giving renewal mortgages or new mortgages on the new stock purchased. Purtell was under no obligation to turn over the proceeds of the sales made by him to Mrs. Meeker or to invest same in other stock to take the place of the goods sold. He could under this agreement apply the proceeds of sales to his own use at will. He could fulfill his agreement as to keeping up the stock by using other money or by borrowing money from others or by purchasing such goods on credit. There is no agreement in this chattel mortgage and there was no agreement outside that the proceeds of sales of mortgaged property made by Purtell should apply in reduction of the debt or be turned over to Mrs. Meeker to apply in reduction of the debt.

It has been held that a chattel mortgage on a stock of goods to be sold in regular course of business by the mortgagor is not invalid as to creditors which contains a provision for the sale thereof by the mortgagor, provided the instrument also contains a provision obligating the mortgagor to turn over the proceeds of such sales to the mortgagee in reduction of the mortgaged debt. Here there is no fraud. The mortgagor sells and turns the proceeds over in reduction of the debt,

and creditors are in no wise injured. It has also been held many times that a chattel mortgage on a stock of goods containing a provision that the mortgagor may sell the same in regular course of business or otherwise for his own benefit or in a mode and manner where the sale is for his own benefit, he being at liberty to retain and use the proceeds of such sales as he sees fit, is fraudulent and void as to creditors, and, it being fraudulent and void as to creditors, it follows that such a mortgage is fraudulent and void as to the trustee in bankruptcy.

It is only necessary to cite on this subject the case of Skilton v. Codington, as Trustee in Bankruptcy, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, reversing 105 App. Div. 617, 93 N. Y. Supp. 460. It is there held that:

"While permission given the mortgagor to sell mortgaged chattels, the proceeds thereof to be applied in payment of the mortgage, does not render a chattel mortgage void because in such case the proceeds of the sales must be treated as reducing the amount due on the mortgage, even though the mortgagor should misapply them or refuse to pay them to the mortgagee, yet a chattel mortgage which expressly provides that the mortgagor may sell and dispose of the mortgaged property and apply the proceeds to the payment of the debt, 'excepting such portion thereof as is necessary for the expenses of the business or as he * * * may need to replenish or increase the said stock of goods,' is fraudulent as a matter of law and void as against creditors; since the mortgage does not require all the proceeds of the mortgaged chattels to be applied either on the mortgaged debt or to the acquisition of new property, but only the surplus after deducting the expenses of carrying on the business; in effect it is an agreement that the mortgagor might conduct the business as if the mortgaged property was his own, selling and buying goods at his pleasure, and, if at any time he should be unsuccessful and be pressed by creditors, then the whole stock should be subject to the lien of the mortgage even against creditors from whom new goods might have been purchased."

The same in effect is held in Newman v. Peyser, 80 Misc. Rep. 404, 141 N. Y. Supp. 422.

There is nothing in Brackett v. Harvey, 91 N. Y. 214, to the contrary.

In the case now under consideration for decision, there is nothing in the mortgage which requires the application of the proceeds of the sales made by Purtell to the purchase of new stock for the purpose of replenishing or increasing the stock of goods. No such requirement can be written into the mortgage by implication. It is not found there.

Under these authorities and for these reasons, this court is compelled to affirm the decision of the special master and hold that Mrs. Meeker can prove her debt, but that it is not a secured debt, and that the mortgage as to creditors and the trustee is void.

Ordered accordingly.