PERCIVAL WILDS, as Trustee in Bankruptcy of the MIDTOWN CONTRACTING COMPANY, Plaintiff, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK, Defendant.

(Supreme Court, New York Trial Term, April, 1918.)

Conversion — action for — schools — contracts — bankruptcy — stipulation — judgments.

A contract for the construction of a public school building provided that if the contractor should make default in the construction work the board of education, the other party to the contract, should have the right to order a discontinuance of all work and to contract for the completion of the work by others, "and to use such materials as it may find upon the line of the work and to procure other material for the completion, so as to fully execute the same in every respect, and the cost and expense thereof at the reasonable market rates shall be a charge against the Contractor, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of the amount to be paid under this contract; and the Contractor shall have no claim or demand to

such unpaid balance, or by the reason of the non-payment thereof to him and shall forfeit all claim to any moneys retained; and no molds, models, centers, scaffolding, plans, horses, derricks, tackle, implements, power plants or building material of any kind belonging to or used by the Contractor shall be removed so long as the same may be wanted for the work." About a month after the contractor had abandoned the work the board of education took possession of such building material and equipment of the contractor as were found upon the lines of the work, no part of which was owned by the contractor when the contract was signed, for the purpose of using the same in the completion of the building. Four days later a petition in bankruptcy was filed against the contractor and thereafter the board of education through a contractor, to whom was let the work of completing the building, commenced to use the materials and equipment. The board refused to deliver the materials to the trustee in bankruptcy but consented to deliver the equipment when it was no longer needed in the work of construction. In an action brought by the trustee in bankruptcy against the board of education for the conversion of the materials it was stipulated that if the refusal of the defendant to deliver the building material and equipment was not wrongful it was entitled to judgment dismissing the complaint upon the merits and that in any event plaintiff was ultimately entitled to possession of the equipment. *Held,* that under the contract the defendant acquired a right capable of being perfected by a subsequent act.

That as both the termination of the employment of the contractor and the taking of possession by defendant preceded the filing of the petition in bankruptcy the qualified property or lien of defendant was prior and superior to the rights of the plaintiff and defendant was entitled to judgment in accordance with the stipulation.

ACTION in conversion.

Olcott, Bonynge, McManus & Ernst (Irving L. Ernst), for plaintiff.

William P. Burr, corporation counsel (John F. Collins and Joseph L. Pascal), for defendant.

PHILBIN, J.  This is an action in conversion.  The facts are stipulated.  Upon the trial before a *pro forma* jury, both sides moved for the direction of a verdict and consented that the same might be directed at any term of court.

On October 13, 1914, the defendant board of education entered into a contract with the Midtown Contracting Company as general contractor for the construction of the Evander Childs High School.  The contract price was $414,141, payable in certain installments as the work progressed.  Among other things, the contract provided in clause " Q " that if the contractor should make default in the construction work, the board of education should have the right to order a discontinuance of all work under the contract and to contract for the completion of the work by others, " and to use such materials as it may find upon the line of the work and to procure other material for the completion, so as to fully execute the same in every respect, and the cost and expense thereof at the reasonable market rates shall be a charge against the Contractor, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of the amount to be paid under this contract; and the Contractor shall have no claim or demand to such unpaid balance, or by the reason of the non-payment thereof to him and shall forfeit all claim to any moneys retained; and no molds, models, centers, scaffolding, planks, horses, derricks, tackle, implements, power plants or building material of any kind belonging to or used by the Contractor shall be removed so long as the same may be wanted for the work."

In July, 1916, the contractor made default in the course of construction and abandoned the same, but prior to such default had received under contract the

total sum of $275,721.39. On August 11, 1916, the defendant duly took possession of such building material and equipment belonging to the contractor as were found upon the lines of the work, for the purpose of using the same in the completion of the building. No part of such material or equipment was owned by the contractor when the agreement of October 13, 1914, was signed. On August 15, 1916, four days after defendant took possession of the materials and the equipment, a petition in bankruptcy was filed against the contractor, and on September seventh the contractor was duly adjudicated a bankrupt. On October ninth the plaintiff was duly elected trustee in bankruptcy. Some time in November, 1916, defendant, through a contractor to whom was relet the work of completing the building, commenced to use the materials and equipment and the excess costs to the defendant will be $60,330.39. Upon the election and qualification of the plaintiff as trustee, he demanded of the defendant immediate delivery to him of the building materials and equipment above mentioned. The defendant refused as to the building materials but consented to deliver the equipment when it was no longer needed in the work of construction. Plaintiff predicates no claim upon the temporary detention of the equipment but does allege a conversion of the building material by the defendant.

The stipulation as to the judgment to be awarded is that if plaintiff is entitled to a recovery he is entitled to judgment for $7,000; that if the aforesaid refusal of the board of education to deliver the building materials was not wrongful the defendant is entitled to judgment dismissing the complaint herein upon the merits; that in any event plaintiff is entitled to ultimate possession of the equipment.

In the case of *Titusville Iron Co.* v. *City of New*

21

*York,* 207 N. Y. 203, the Court of Appeals considered the same clause " Q " here involved. It is claimed that the decision in that case is decisive in favor of the plaintiff in the instant case. The facts in the *Titusville* case were in many respects identical with those in this, but with some substantial points of difference. In holding that the board of education (a co-defendant) was guilty of conversion, the Court of Appeals pointed out that the petition in bankruptcy was filed prior to the termination of the contractor's employment and prior to the time when the board of education gained possession of the materials; the record on appeal indicates that the taking possession was subsequent to the appointment of a receiver and subsequent to his service of notice of claim to the property. The conclusion was that as the " title of the contractor passed to the receiver in bankruptcy before the forfeiture authorized by the contract had accrued or the defendant taken possession," the rights of the trustee, as representative of the creditors, were superior to those of the board of education.

The mere recital of the above reasons for the decision in the *Titusville* case indicates clearly that the decision is not an authority in favor of this plaintiff. On the contrary, the decision, at least inferentially, favors the defendant. The termination of the employment of the Midtown Contracting Company, the taking of possession by the defendant, both preceded the filing of the petition in bankruptcy, at which time the trustee took the status of a lien creditor. *Border National Bank* v. *Coupland,* 240 Fed. Repr. 355; Bankruptcy Act, § 47a, cl. 2. But prior to the acquisition of such status, the defendant had duly terminated the contractor's employment and duly exercised its right to take possession of the property for the purpose of holding it for use in the completion of the work. In

other words, the qualified property or lien of the defendant was prior and superior to the rights of the plaintiff. *Matter of Shelly,* 235 Fed. Repr. 311; affd., 242 id. 251; *Duplan Silk Co.* v. *Spencer,* 115 id. 689.

In the *Titusville* case, Judge Chase concurred in the result only (as did another member of the court) and dissented from the view expressed in the majority opinion. A careful comparison, however, of the prevailing and minority opinions reveals very little difference in principle. The clear meaning of the prevailing opinion is that, by virtue of the building contract, the board of education acquired a right to use the materials but the right could only be perfected as against creditors by taking possession of the materials before the creditors acquired a lien by the filing of a petition in bankruptcy. Judge Chase declares that the contract had a like effect but does not find it was necessary for the board of education to take actual physical possession in order to perfect its rights. He says that as soon as the materials were delivered on the line of the work the board of education became the qualified owners, the only limitation in its title being that the contractor could reclaim the materials if not used. There can be little doubt that the reasoning in the two opinions, applied to the facts as they are stipulated here, compels the conclusion that the plaintiff should not prevail in this action.

The plaintiff also places great reliance upon *Zartman* v. *First National Bank,* 189 N. Y. 267. In that case it was held that the rights of a trustee in bankruptcy were superior to those of a mortgagee who took possession under his mortgage three days before bankruptcy. The mortgage was on a shifting stock of goods and the mortgagor had reserved the right to sell the goods " precisely the same as if no lien existed "

(p. 270). In other words, the parties there agreed in the same breath that the mortgage should, and should not, bind the chattels as security for the debt. The mortgage was held void as to the creditors as matter of law, being in fraud of their rights. The court necessarily said that the taking of possession prior to the filing of the petition could not "ripen the lien," because it was void in its inception. In this case the defendant, under a valid building agreement, acquired a right capable of being perfected by a subsequent act.

While the United States District Court for the Southern District of New York, in passing upon the facts involved in the instant case, reached a conclusion different from the one now stated (*Matter of Midtown Contracting Co.*, 238 Fed. Repr. 871), the decision is inconsistent with the reasoning of the opinions of the Court of Appeals in the *Titusville* case. Furthermore, it may be observed that the Circuit Court of Appeals reversed the District Court (243 id. 56) although merely on a question of jurisdiction and without considering the questions now discussed.

The defendant is entitled to judgment in accordance with the terms of the stipulation.

Judgment accordingly.