Froessel, J.
(dissenting). The assignment here made to the bank embraced “ all monies due or which may become due [to the assignor] from the State Liquor Authority or the Comptroller of the State of New York * * * in the event that' a license is not granted * * * or in the event of the surrender * * * cancellation or other release, of the license fee granted to the” assignor. Notwithstanding the several decisions of the Appellate Division cited in the prevailing opinion, we upheld, in Matter of Capitol Distrs. Corp. v. 2131 Eighth Ave. (1 N Y 2d 842), a determination that the assignee, in a situation virtually identical with the one here involved except that the refund arose out of the disapproval of the license application instead of by way of surrender, was entitled to priority as to such refund where the judgment creditor served its third-party subpoena after the filing of the assignment and after the State Liquor Authority had forwarded a refund order to the Comptroller.
In our judgment, that determination compels the same result in the case before us, and we should follow the decisions in our own court, to which further reference will presently be made. After moneys have once been deposited, they are subject to return to the depositor in the event that the license is not granted, or pro tanto in the event that the license is surrendered. If, therefore, after disapproval of the application on the one hand or surrender of the license on the other, the whole or any part of the moneys is payable to the depositor, there is no reason in law or logic why an assignee who supplied the moneys should not in either case take precedence over subsequent liens -of a judgment *435 creditor. In both, cases, assignments taken at the time of the loans were filed prior to the critical date, and the subpoenas in supplementary proceedings were filed later. We see no distinction whatever between the possibility of the return of a deposit in case of disapproval and the return of part of a deposit in ease of surrender. Either eventuality may or may not happen. There is no more certainty in the one case than in the other. To the extent to which the law allows a licensee to surrender his license for cancellation, the fund to which he is entitled belongs to him whenever he wants it (Alcoholic Beverage Control Law, § 127), just as if it were on deposit anywhere else.
The line of surrender cases in the lower courts, relied on in the prevailing opinion, sought to apply the rule enunciated by this court in Zartman v. First Nat. Bank of Waterloo (189 N. Y. 267) and Titusville Iron Co. v. City of New York (207 N. Y. 203). These two cases held that the equitable lien created by the mortgage or pledge of chattels to he acquired in the future was enforcible between the parties thereto but was void as to creditors. The reason for such a holding was explained in the Zartman case (p. 271) as a desire to protect “ general creditors, who are presumed to have dealt with the mortgagor in reliance upon its absolute ownership of the stock on hand * * *
who had little, if anything, to rely upon except the shifting stock, which, directly or indirectly, they themselves had furnished ”, and (p. 273) as to whom the “ agreement permitting the mortgagor to sell for his own benefit renders the mortgage fraudulent as matter of law ”. (See, also, Rochester Distilling Co. v. Rasey, 142 N. Y. 570, as to future crops.)
While this is the rule with regard to the mortgage or pledge of future crops or after-acquired chattels, it is not the general rule, and neither the rule (as to such crops and chattels) nor the reasons therefor have ever been applied by us to the assignment of a fund which is to come into existence out of a present property right, and which fund was advanced by the assignee. We have held, in a wide variety of circumstances, that where the fund is to arise out of an existing relationship between the assignor and the potential source of the fund, such an assignment is valid as against creditors of the assignor who acquire liens after the fund comes into existence (see, e.g., Matter of Gruner, 295 N. Y. 510 [proceeds from the sale of a seat on the Stock Exchange]; Niles v. Mathusa, 162 N. Y. 546 [refund on surrender of liquor tax certificate]; Bates *436 v. Salt Springs Nat. Bank, 157 N. Y. 322 [payments under a building contract]; Fairbanks v. Sargent, 117 N. Y. 320 [proceeds of collection of debt]; Williams v. Ingersoll, 89 N. Y. 508 [recovery in personal injury litigation]; Stover v. Eycleshimer, 3 Keyes 620 [expectancy of an inheritance]; see, also, 2 Willis-ton on Contracts, § 413; 4 Pomeroy on Equity Jurisprudence, §§ 1283,1291).
In Niles v. Mathusa (supra) we held that the assignee of a liquor tax certificate was entitled to the right to refund thereon over a creditor acquiring a lien by supplementary proceedings subsequent to the assignment. Under the law at that time, the licensing rights of such a certificate, as well as the refund rights, could be assigned; under the Alcoholic Beverage Control Law (§ 114, subds. 2, 3) the license rights cannot today be transferred. However, the assignor continued to use the license rights, keeping the certificate posted in his place of business, and the court treated the transaction as an assignment of a chose in action. The court rejected the argument, which was successfully used in the Zartman case (supra), that the assignor was clothed with apparent ownership and thus the assignee should be estopped from setting up the assignment against creditors. Citing Fairbanks v. Sargent (supra) and Williams v. Ingersoll (supra), the court decided that the creditor was in no different position than a subsequent assignee who would be subordinate to an assignee prior in time.
In Matter of Gruner (supra) we held that where the holder of a seat on the Stock Exchange assigned the proceeds of a future sale of such seat as security for a loan, the assignee was entitled to priority over the tax claims of the State, which had not issued a warrant prior to the time the seat was sold. Chief Judge (then Judge) Conway, writing the opinion for the court, stated the rule to be applied to such assignments (p. 525): “ The assignee of a thing in action acquires at once ‘ an equitable ownership therein, as far as it is possible to predicate property or ownership of such a species of right; * * * ’ (Pomeroy’s Equity Jurisprudence [5th ed.], § 168, p. 221). Where, as in this instance, the chose in action was turned into money and became available in the hands of the exchange for payment to the assign- or’s administratrix, the equitable lien attached to it immediately and equitable ownership of the fund passed to the trust company, needing but the action of a court of equity to enforce its right *437 to payment. At that moment, the lien of the trust company, which was greater in amount than the proceeds of the sale of the seat, and of all the assets of the estate, became capable of perfection and so was perfected, and the trust company became a secured creditor.” (Emphasis in original.) It is true that after our remand in that case, and upon additional proofs, it developed that the lien of the State had attached on May 27, 1943, whereas the proceeds of the sale of the seat were not available until March, 1944; hence it was properly held on those facts that the lien of the trust company assignee was subordinate to that of the State (Matter of Gruner, 4 Misc 2d 471).
In the case before us, in order to decide priority we must determine the date on which the fund assigned came into existence so as to perfect the bank’s equitable interest. If the city acquired its lien after this date, the bank is entitled to priority. The Appellate Division was of the opinion that this was on October 5th, when the State Liquor Authority forwarded the refund order to the Comptroller. In this they were in error.
In Matter of Strand v. Piser (291 N. Y. 236), this court was called upon to determine (p. 238) “ when, under section 127 of the Alcoholic Beverage Control Law, a judgment debtor’s right to a refund [as the result of surrender] from the State Comptroller comes into existence ” (bracketed matter supplied). Rejecting the argument based on one of the surrender cases (Palmer v. Tremaine, 259 App. Div. 951) that this occurred when the State Liquor Authority delivered its certificate of approval to the Comptroller, we held that a judgment creditor who served a third-party subpoena, after the license had been surrendered but before the State Liquor Authority certified its approval, was entitled to priority over creditors who served immediately after the approval of the Authority. In reaching this conclusion, the court determined that, immediately upon the surrender of the license (p. 239), “ the Comptroller had in his custody ‘ property of the judgment debtor * # * or [was] indebted to him ’.” "We said (pp. 240-241): “ We read in the excerpts from section 127, quoted above, an intention by the Legislature to declare a refund ‘ due ’ on the date when the license is surrendered for cancellation. Accordingly in the present case the refund became due on * * * [the date of surrender], and created on that date in favor of the judgment debtor an obligation whereby the Comptroller, a third party, *438 became ‘ indebted ’ to the judgment debtor * * *. Although section 127 of the Alcoholic Beverage Control Law directs that payment of the refund be deferred for a period of thirty days, an obligation impressed upon the Comptroller by the statute remained and was sufficient to make the third party subpoena, served upon the Comptroller * * *, legally effective as a basis for determining the priority of the right asserted by the appellant creditor to the refund.”
The bank’s equitable interest in the instant case, accordingly, was perfected on July 8th when the license was surrendered and the refund became “ due ” to Bedford, only one day intervening between that date and the day the Comptroller acknowledged receipt of the assignment. The tax claim of the city first became a judgment on August 13th when its warrant was docketed. Its third-party subpoena based on that judgment was served on the Comptroller on September 24th. Both of these events were subsequent to the date of surrender as well as the 30-day period thereafter, during which the State Liquor Authority might still cancel the license because of a possible previous violation of the Alcoholic Beverage Control Law and forfeit the refund (Alcoholic Beverage Control Law, § 127, subd. 1). Refund after the surrender date, and in any event after this 30-day period, is a purely ministerial act. Of course the Comptroller may make certain deductions for State taxes, but this does not delay the date on which the fund comes into existence, for he can only do this on the theory that the fund already belongs to the licensee and is no longer part of the general license fee fund in his custody. Consequently, the bank, by virtue of its assignment which was perfected prior to the date on which the city perfected its lien, is entitled to priority in the satisfaction of its claim out of the moneys held by the Comptroller to the credit of Bedford.
The city also argues that the veto by the Governor (without memorandum) of two bills which were passed by the Legislature to amend section 127 of the Alcoholic Beverage Control Law in order to effect the result recommended here (Assem. Int. No. 1905, Pr. No. 1976, 1954 Sess.; Sen. Int. 1477, Pr. No. 1566,1954 Sess.; Assem. Int. No. 1283, Pr. No. 1299, 1955 Sess.; Sen. Int. 892, Pr. No. 919, 1955 Sess.), is of significance “ that the law makers have rejected such a change ”. Aside from the fact that this was not an example of the refusal by the Legislature to act, but quite the contrary — it did so act — such refusal, if any *439 there were, would only be relevant where the interpretation of the legislation sought to be amended is at issue, as in the cases cited by the city. Here we are concerned with the effect of an assignment, a question with which section 127 of the Alcoholic Beverage Control Law never attempted to deal. It may well be argued that the reason why our lawmakers enacted the proposed legislation was because they wished to nullify the effect of the surrender decisions in the third department, none of which had been appealed to our court, and thus conform to the law as laid down by us in kindred situations.
Accordingly, the orders of the Appellate Division and Special Term should be reversed, the motion of the City of New York denied, the cross motion of Manufacturers Trust Company granted, and the Comptroller of the State of New York directed to pay to Manufacturers Trust Company the sum of $658 to the credit of the judgment debtor herein, with costs.
Dye, Fuld and Van Voorhis, JJ., concur with Desmond, J.; Froessel, J., dissents in an opinion in which Conway, Ch. J., concurs; Burke, J., taking no part.
Order affirmed.