William C. Hecht, Jr., J.
In this application (motion No. 60, March 31, 1960) plaintiff Bank of America moves for an order pursuant to section 285 of the Civil Practice Act, directing the disposition of a fund in its possession, relieving plaintiff of all liability to the defendants, and for incidental relief. In a motion (No. 59, March 31, 1960) Wall Street Traders, Inc., moves to vacate the lien of attachment, which motion is treated as a cross motion herein. Cross motions have been made by several of the defendants and due consideration is given here to all said applications.
Charter party moneys to be earned by the vessel Valiant Hope, owned by Hope Steamship Corporation and operated by Ocean Carriers Corporation, and to be earned by the vessel Valiant Force, owned by Force Steamship Corporation and operated by Ocean, were assigned to Transpollux Carriers Corporation. Those charter parties, with third parties not here involved, were valid and binding contracts obliging the contracting parties to make payment of freight earned upon the completion of loading. Transpollux received the assignments for the purpose of obtaining financing in respect to the loading and performance of the charter parties. This financing was obtained from the plaintiff bank. The assignments to Transpollux provided for reversion to its assignors upon full payment to the bank furnishing the financing. Transpollux had in turn assigned the charter moneys to plaintiff.
*526 Thereafter certain additional assignments in stated amounts were made in favor of six of the defendants, and these assignments were approved by Ocean, Transpollux and by Hope in respect to Valiant Hope and by Force in respect to Valiant Force. These transactions were accomplished sometime prior to the levy made pursuant to an attachment on J anuary 5, 1960 in favor of the attachment creditor, the Marine Midland Trust Company of New York, represented here by the defendant Sheriff. A further levy was made on the plaintiff bank on January 20, 1960. The attachment was issued in the action brought by Marine Midland against Transpollux, which went to judgment on February 17, 1960. It does not appear that anything more was done with respect to the judgment. The charter party moneys were received by the plaintiff on J anuary 7 and January 8, 1960.
In the action brought by Marine Midland against Transpollux, the defendant Esso has made an application for relief pursuant to section 924 of the Civil Practice Act. The attorneys representing the plaintiff there also represent the defendant Sheriff in this action, and urge that, since all the parties are before the court in this action and all issues are here tendered, full disposition may be made here to be binding upon Marine Midland, though it is not itself a party to this action.
Plaintiff now holds a balance of $55,500 as charter moneys derived from Valiant Hope and $115,415.48 as charter moneys derived from Valiant Force, which, after deducting on account of interest the sum of $1,387.16, leaves a total of $169,528.32. In addition, plaintiff had in its possession to the credit of the account of Transpollux the sum of $889.09 and received an additional deposit on January 11, 1960 in the sum of $825.10. Thus plaintiff now has in its possession the total sum of $171,241.51. The Sheriff claims the entire sum, pursuant to the levies made under the attachment, and the claimant defendants demand $161,000 thereof.
The instructions given to the bank for the payment out of the charter moneys to the several defendants are as follows: out of the Valiant Hope charter moneys, $10,000 to the defendant Texas; $30,000 to the defendant Esso and $10,000 to the defendant Seaboard. With respect to the charter moneys out of Valiant Force, $16,000 to Investors, Inc.; $10,000 to Consultants, Inc., and $85,000 to Traders, Inc.
It would appear upon the basis of this record that Transpollux had nothing to which a levy under an attachment would apply. What plaintiff held under the assignment from Trans *527 pollux did not belong to the latter and did not constitute money or property in plaintiff’s possession and belonging to the attachment debtor. What plaintiff held applicable to the claims of the other defendants after full repayment to itself could not be assigned by Transpollux except with the consent of the latter’s assignors, and that consent was given. Thereupon, after payment to the plaintiff and ' to the defendant claimants, any surplus belonged to the assignors of Transpollux.
In any event, what was assigned in favor of the defendant claimants would arise not by virtue of some future contingency creating a basis for the production of the fund but rather moneys to be earned and growing out of existing valid charter parties. In addition, the first levy was made before the freights were earned and the second levy was made after the freights were earned, while all assignments in dispute were made a considerable time before the first levy. The attachment debtor having thus assigned with the consent of the actual owners, the attachment creditor has nothing to take from the debtor.
The attachment creditor relies on Matter of City of New York v. Bedford Bar & Grill (2 N Y 2d 429). There, on January 29, 1953, the bank made a loan to Bedford, taking an assignment of any refund that might become due to Bedford should its liquor license not be granted by the State, or if the license were granted, it should thereafter be surrendered or cancelled. There being default in payment, the loan was called by the bank in June, 1953. A few days thereafter the bank filed its assignment with the State Comptroller. Several days later, Bedford surrendered its license for cancellation. A month thereafter the city docketed against Bedford a warrant for taxes due from Bedford. In September, 1953 the city served on the State Comptroller a third-party subpoena in supplementary proceedings, which created for the city a judgment creditor’s lien on Bedford’s property in the Comptroller’s hands resulting from the license surrendered. The court followed the rule enunciated in eight earlier decisions, in each of which it was held (p. 432) “ that an assignment of moneys due from a liquor license cancellation refund, executed before the fund came into existence, is subordinate to the lien of a judgment creditor who has served a third-party subpoena ”. (Italics supplied.)
In Bedford (supra) the assignment was made before the surrender of license, a contingency not provided by any contractual relationship and to arise in performance thereof, while here the assignment was made after the origination of the assigned moneys to be earned by virtue of charter parties.
*528 In Bedford, a third-party subpoena was served after the money became due by reason of the surrender, and thereby a judgment creditor’s lien was created. The court there indicated (p. 432): “ Especially as to such law merchant questions, adherence to the precedents on which businessmen and their lawyers rely is most desirable.” In its opinion the court specified two additional reasons for its determination. The first was that (pp. 432-433) the “ undoubted general rule (Zartman v. First Nat. Bank of Waterloo, 189 N. Y. 267; Titusville Iron Co. v. City of New York, 207 N. Y. 203) is that as between a judgment creditor’s lien and the equitable lien of an assignee of property subsequently to be acquired, the latter, while his rights will be enforced in equity as against his assignor, has no right at all as against the former”. Again the rule is stated as to a judgment creditor’s lien. In Zartman it was stated that one cannot grant what he does not own actually or potentially.
Here, the freights were potentially owned by reason of the charter parties. Moreover, as to mortgages involving after-acquired property, the lien does not attach, for the property is not in existence and there is nothing, actual or potential, to which a lien will attach until the property is acquired. Moreover, here the charter parties provided the freights and a property therein exists. Further, in discussing Matter of Gruner (295 N. Y. 510; id. 4 Misc 2d 471), the court in Bedford said (p. 433) that the holding was “ that such a judgment lienor has priority over an equitable assignee like the appellant bank here ”. Finally, in discussing Matter of Capitol Distrs. Corp. v. 2131 Eighth Ave. (1 N Y 2d 842), the court stated (p. 433):
“ In the Capitol Distributors case the assignment was not one of a fund to come into existence in the future, but was of a present interest and for a present consideration; it was not, as here, a refund of a partly used-up license fee but a return to an unsuccessful license applicant of the deposit which he had made as against the issuance of a license applied for but never issued (see Alcoholic Beverage Control Law, § 54, subd. 2; § 63).
“ Since the bank had in the Capitol Distributors case a legal assignment of an existing fund owned by its assignor, it got its priority over later creditors even when the latter were armed with judgment liens. But here appellant had only an inchoate or equitable claim on a yet to be created fund (see Matter of Strand v. Piser, 291 N. Y. 236, supra) and so it must yield priority to judgment lienors.” (Italics supplied.) In the eir *529 cumstances here and in the light of what the prevailing opinion in Bedford does state, the following statement in the dissent therein is nevertheless valid (p. 435): “We have held, in a wide variety of circumstances, that where the fund is to arise out of an existing relationship between the assignor and the potential source of the fund, such an assignment is valid as against creditors of the assignor ivho acquire liens after the fund comes into existence ” (italics supplied).
It is here urged by one of the defendants that the Bedford case is distinguishable from the instant case for the reason that in Bedford the statutory lien was created by a subpoena in supplementary proceedings, whereas here there was no judgment at the time of either attachment by the Sheriff. In this connection the attachment creditor urges that the Civil Practice Act expressly provides that an attachment lien and a judgment lien are of equal effect, with priority going to the one first attaching, whether it be an attachment lien or a lien of exclusion. In support of this contention, the attachment creditor relies on sections 680 and 681 of the Civil Practice Act. They are, however, wholly unrelated to the problem here presented as between the assignees and the attachment creditor. Even so, those sections referred to priority with respect to the property of the judgment debtor, and it is a fact that at the time of the levies pursuant to the attachment the debtor had available no property applicable to the levy.
Accordingly, the defendant claimants must prevail, and all motions are disposed of in consonance herewith. There remains the question whether plaintiff in its interpleader action should have its expenses, costs and disbursements, including reasonable attorneys’ fees. The court rejects the contention that the plaintiff was in any way wrongful or mistaken in failing to comply with the instructions and in instituting this action of interpleader.
Therefore the court will award plaintiff a counsel fee inclusive of actual disbursements which will be determined and included in the order which is to be settled herein on notice, and in respect of which short statements may be submitted with said order indicating the disbursements and suggestions of the parties as to the amount of the counsel fee to be allowed and the proportion thereof to be charged to the respective funds. No other relief as requested in subdivision “ 3 ” of the prayer for relief in the moving affidavit will be allowed except as herein indicated.