THOMAS P. GEDDES, Appellant, *v.* DANIEL ROSEN, Respondent. DANIEL ROSEN, Defendant and Interpleading Plaintiff, Respondent, *v.* ALVIN S. McEVOY et al., Interpleaded Defendants, Respondents.

First Department, January 21, 1965.

*William Rand* of counsel (*Coudert Brothers,* attorneys), for appellant.

*Jacob Freed Adelman* of counsel (*Daniel Rosen* and *Jacob Freed Adelman,* attorneys), for respondents.

STEVENS, J. Plaintiff appeals from an order entered October 9, 1964, which granted the consolidated motion of the defendant and interpleaded defendants to the extent of giving them leave to serve and file a jury demand and directing that upon so doing the case be transferred to the general jury calendar.

May 5, 1961, plaintiff-appellant (appellant) and the interpleaded defendants-respondents, Alvin S. McEvoy, Great Lakes Forwarding Corporation, Hargrun Corp., and Bloomfield Terminal and Equipment Co., Inc. (McEvoy), entered into a written agreement in which, *inter alia,* it was acknowledged and understood that with appellant's knowledge and consent, McEvoy was attempting to negotiate with a purchaser of the operating authority of Great Lakes Forwarding Corporation together with the assets of the McEvoy interests. Appellant waived the provisions of a stock purchase agreement of April 1, 1957, between the parties, with respect to his 30-day option of first refusal of the sale of assets of the McEvoy interests. The agreement provided the existing salary arrangement under an employment contract of June 12, 1957, should continue, but that appellant would take an immediate leave of absence until June 1, 1961, meanwhile continuing to draw salary as provided in the employment agreement (of 1957). The 1961 agreement contained a provision that if Interstate Commerce Commission (ICC) approval of the contemplated sale were not obtained or if the asset sale agreement were not consummated the rights of the parties to the 1961 agreement " are. to be determined on the basis of their existing Employment Agreement of June 12, 1957 ". Provisions were included for payment to appellant of a portion of the moneys received from the sale subject to a limitation set forth in paragraph VII.

Paragraph VII provides: " The balance of the purchase price shall be payable to McEvoy Interests in monthly installments,

of which Geddes is to receive one-third thereof; but the total of all monies paid to Geddes, including but not limited to salaries, portions of the down payment, and the monthly payments made thereafter, shall not exceed in the aggregate the total sum of $118,000.''

To assure payment it was agreed the down payments received, and, by amendment of May 5, 1961 certain installment payments, would be paid to defendant Rosen as escrowee, who in turn would make the distribution provided for in the agreement.

An asset sales agreement was entered May 12, 1961, between McEvoy and others conditioned, in part, upon ICC approval.

The difficulty between the parties arose after Rosen, the escrowee, ceased to make payments to appellant. Rosen, in his answer to the complaint herein, asserts that on May 1, 1963, he was notified by McEvoy by certified mail that appellant had been paid all moneys due under the employment agreement of June 12, 1957, and the agreements of May 5, 1961 and May 12, 1961. Rosen advised appellant of McEvoy's communication and demand for the money. Appellant informed Rosen he had not been paid in accordance with the agreements and upon Rosen's failure to make further payments appellant brought suit against Rosen.

The complaint alleged, in part, the receipt by Rosen of certain payments as a result of the asset sale agreement, the payment to plaintiff of a total amount therefrom of $37,166.52, and sought a judgment for the balance allegedly due of $80,833.48, plus interest.

Rosen interpleaded McEvoy and, in his answer, set forth the conflicting claims of appellant and McEvoy and his willingness to pay the amount claimed into the court or to retain it subject to the further order of the court. Rosen interposed a counterclaim (and a similar claim in his interpleaded complaint) for $10,000 for the reasonable value of his services as escrowee and for expenses and disbursements incurred by him in that capacity. He alleged appellant and McEvoy agreed to pay a reasonable fee, expenses and disbursements.

The interpleaded defendants, in addition to denials, pleaded as affirmative defenses, that the purchase agreement was not consummated as provided for in the May 12, 1961 agreement, full payment to appellant, accord and satisfaction by appellant's acceptance of a check '' in full payment '', and release and estoppel.

Thereafter appellant filed a note of issue designating the nature of the action as '' An accounting by an escrow agent for funds held in trust.''

Rosen and McEvoy then moved to vacate the note of issue and to strike the case from the equity calendar or, alternatively, to transfer the case to the general jury calendar with leave to Rosen and McEvoy to file a demand for a jury trial. It is from the granting of the motion that this appeal is taken.

Appellant urges this is an action in equity and the issues are not triable by a jury. Rosen and McEvoy assert this is essentially an action at law for breach of contract (of the May 5, 1961 agreement), for Rosen's failure to perform in accordance therewith and they are entitled to a jury trial.

Before turning to the single question involved, whether a jury trial can properly be demanded and granted, several features of this action might be noted.

A defendant stakeholder may properly "bring in a claimant who is not a party by serving upon such claimant a summons and interpleader complaint and all prior pleadings served in the action" (CPLR 1006, subd. [b]). Thus McEvoy was properly brought in, since otherwise Rosen faced the prospect of exposure to multiple liability.

Another factor noted is that Rosen interposed a counterclaim against appellant, and this counterclaim is itself a cause of action (CPLR 3019). The test is whether the counterclaim is itself sufficient to support an independent cause of action against plaintiff in the same capacity in which plaintiff sues (*Ruzicka* v. *Rager*, 305 N. Y. 191, 196; *O'Donnell* v. *Vanecek*, 3 Misc 2d 20; cf. *Granick* v. *Mobach*, 13 A D 2d 534, as to possible offset against plaintiff's demand).

While the statute provides that the issues of fact shall be tried by a jury where the party "demands and sets forth facts which would permit a judgment for a sum of money only" (CPLR 4101, subd. 1), "it is the form of relief the facts stated entitle the plaintiff to, that determines whether the cause of action is in law or in equity." (*Clearview Gardens First Corp.* v. *Weisman*, 206 Misc. 526, 527.) "What is triable by law or in equity is purely a matter of historical development" (*ibid*, p. 528) for the right to jury trial affects only the form of the trial.

"The general rule is that if the matter was historically cognizable in a court of equity, no right to a jury obtains, since equity courts operated without juries. If, however, the matter would have been decided by a jury in a common-law court, had the case been litigated prior to the merger of law and equity, there is today a right to trial by jury" (4 Weinstein-Korn-Miller, N. Y. Prac., par. 4101.02). While interpleader is a form of procedure developed in equity, that fact "does not affect the right to a trial by jury * * * used in actions that

involve claims that are legal'' (*ibid.;* see, also, 2 Weinstein-Korn-Miller, N. Y. Prac., par. 1006.11). But it has been held where a third party claiming to own the cause of action was brought in by interpleader and substituted as defendant, the original defendant, having paid the money into court and been discharged, that the action thereafter became an equitable one and neither party had a right to trial by jury. (*Clark* v. *Mosher,* 107 N. Y. 118.) In that case the money in controversy was the proceeds of an insurance policy claimed by both the plaintiff and the defendant's intestate. Neither party had a right of action at law against the other for neither created the fund, but both claimed a legal right of action against the insurance company. Certainly a true interpleader as in the case cited is in equity and the fund is undeniably a trust fund to be totally disbursed upon the ascertainment of the identity of the rightful claimant or claimants. (See *Zies* v. *New York Life Ins. Co.,* 237 App. Div. 367. See, generally, Frumer '' On Revising the New York Interpleader Statutes '', 25 N. Y. U. L. Rev. 736.)

In the case before us the particular escrow fund was derived from a sale of assets owned by McEvoy, and appellant seeks to carve out of the total fund a specific interest. Appellant's right of recovery under the agreement was not absolute and unconditional for a fixed sum, but contingent upon the consummation of the asset sale and limited to a maximum amount to be calculated by various considerations, '' including but not limited to salaries, portions of the down payment, and the monthly payments made thereafter ''.

If the sale were not consummated appellant certainly could maintain a direct cause of action against McEvoy for breach of the employment contract, or for any balance due him under such contract. On the other hand if, as McEvoy contends, payment as agreed has been made in full, appellant's right to or interest in any fund was exhausted. Even if it be considered that Rosen once stood in a fiduciary relationship to appellant, if payment has been completed, as alleged, such relationship has terminated, and there is no trust to be impressed.

Appellant is not suing to have Rosen account for moneys unknown to him, but to recover a specified sum, claiming Rosen failed to abide by the escrow agreement to turn such money over to him. In light of the seriously conflicting positions of the parties and the divergent claims, plaintiff should be required to establish his claim before we hold there is a matured fiduciary relationship as to Rosen, and the fund thereby impressed with a trust.

Here Rosen asserts a claim based on an alleged agreement, in a specific amount against both appellant and McEvoy. If his claim be valid, the fund could be reduced by setoff (cf. CPLR 1006, subd. [g]; *Ellicott Paint Co.* v. *Buffalo Evening News*, 33 Misc 2d 896, mod. 17 A D 2d 911; *Bank of America* v. *Transpollux Carriers Corp.*, 26 Misc 2d 524, allowance by the court of counsel fees and expenses).

The validity of the conflicting claims and the determination of any right appellant has can only be determined by recourse to the agreement of May 5, 1961. Appellant's remedy is at law and is adequate. Giving the cause a semblance of an action in equity by the pleading, and by its designation in the note of issue as an action for an accounting, does not change its basic nature. Nor should the single fact of interpleader suffice to change this action at law into one in equity so as to deny the right to trial by jury. Legal defenses have been pleaded which should be determined in a trial by jury if the pleader so elects. Nor should defendants be deprived of this right by the form of appellant's pleading and the fact of interpleader. To do so is to penalize expeditious adjudication of all claims in a single action. There is no magic in the mere use of the term "equity". (Cf. *Matter of Garfield,* 14 N Y 2d 251; *Schank* v. *Schuchman,* 212 N. Y. 352.)

Weinstein refers to the sometime harshness and difficulties frequently encountered as a result of interpleader converting an action at law into one in equity and observes "[a] fairer result might be reached by recognizing that the judge should decide if interpleader lies but the jury should decide issues between the claimants where these issues are normally decided by juries." (2 Weinstein-Korn-Miller, N. Y. Prac., par. 1006.11.)

Despite the declared abolition of distinctions between actions at law and suits in equity and the forms of those actions (CPLR 103) the question of jury trials and the right thereto still poses a problem in certain cases. Interestingly enough while the right to jury trial is explicitly preserved in the State of New York (N. Y. Const., art. I, § 2), equity has made use of the advisory jury, though its influence is, as indicated, limited (CPLR 4403). Historically, resort to equity in the classic instance was because an appeal to the conscience of the Chancellor afforded an elasticity of disposition, a remedy not available on the law side, and the Chancellor was not bound by the limitations there encountered. The case before us is not such that only equity can fashion a decree as an effective remedy to appellant. If indeed appellant is rightfully entitled to certain

moneys under the contract, and this right be established at trial, the verdict and judgment thereon will afford adequate relief.

The order appealed from should be affirmed, with costs and disbursements to respondents.

Breitel, J. (dissenting). Special Term granted the consolidated motions of defendant and interpleaded defendants to strike the action from the equity nonjury calendar and to place it upon the law jury calendar. The issue is whether in an action converted under the modern procedure into one for interpleader there is a right to a trial by jury (CPLR 1006, 4101).

I am constrained to dissent and to vote to reverse and deny the consolidated motions on the ground that the action is not one for the recovery of a judgment for a sum of money only and that there is, consequently, no right to a jury trial.

Under the purchase and sale of certain corporate assets, provision was made in an agreement among the parties to this action for the payment of a portion of the purchase price to a lawyer, defendant Rosen, as escrow agent. Upon certain conditions, the escrowee was to pay plaintiff Geddes a computable sum of money, now aggregating, allegedly, some $80,000, in discharge of claims made by him, and the balance was to be paid to the interpleaded defendants. Plaintiff Geddes sued the escrowee to recover the $80,000 sum claiming, the conditions having been fulfilled, that he was entitled to payment. Because the interpleaded defendants dispute that the conditions have been fulfilled and claim all of the moneys held by the escrowee, the escrowee answered offering to hold the moneys subject to the court's direction or to pay them into court. At the same time the escrowee interpleaded the defendants, who dispute with plaintiff Geddes the right to the escrow funds.

When plaintiff Geddes noticed the case for trial on the nonjury calendar, the interpleaded defendants and defendant Rosen, the escrowee, made the instant motions.

CPLR 4101 provides for a jury trial on demand in an action "in which a party demands and sets forth facts which would permit a judgment for a sum of money only", or in any other action "in which a party is entitled by the constitution or by express provision of law to a trial by jury." The statute in referring to a money judgment is referring to the kind of judgment for the enforcement of which execution issues generally against the assets of the judgment debtor (see CPLR 5201 et seq., cf. CPLR 211, subd. [b], providing for a limitation period on money judgments; CPLR 5011, for a general definition of judgments).

This is not such a case. A specific fund or asset, which happens to consist of money, is involved. A general execution would not issue against the escrowee, nor would he be obligated to pay interest on the judgment or award as a general judgment debtor would be obligated to pay under CPLR 5002 and 5003. For his failure to pay the judgment from the specific fund the escrowee could be punished directly under CPLR 5104 as for a contempt, while a money judgment could only be enforced under CPLR 5201 *et seq.*, as provided in CPLR 5101. Moreover, as an escrowee the original defendant would be obligated, in the absence of consent by the interested parties to do otherwise, to keep the entrusted funds separate and to account for them as a trustee and professionally as an attorney holding escrow funds. That an escrow agent is or may be a trustee, see *Farago* v. *Burke* (262 N. Y. 229, 233) (see, also, 30 C. J. S., Escrows, §§ 1, 8). Hence, under the statutes and the Constitution there is no right to a jury trial.

The decisional law yields a similar conclusion on the broad ground that proceedings in the nature of interpleader, because of their origin in equity, do not permit of a right to a jury trial, and that when a jury is used its verdict is only advisory. Consequently, the rule has been applied even in actions to recover moneys, not in specie, but obligated under general contractual liability. The leading case is *Clark* v. *Mosher* (107 N. Y. 118), an authority of long and unquestioned standing (see, e.g., *Bata* v. *Bata,* 306 N. Y. 96, 100). There the disputed moneys had been paid into court, and the dispute was between interpleaded defendants. It was held that the proceeding was in the nature of an equitable one for interpleader in which there was no right to a jury trial. Observing that the original cause of action may have been at law, the court said (p. 122): "Neither party had any right of action at law against the other, but by this equitable proceeding, authorized by the Code, the Insurance Company, against whom both claimed a legal cause of action, was discharged, and they were brought together to litigate the question which of them had the better right to the fund in controversy. No right of trial by jury ever existed in such a case." (Accord, *Zies* v. *New York Life Ins. Co.,* 237 App. Div. 367, 371; see 2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1006.11; 4 *id.,* pars. 4101.01–4101.12, esp. 4101.12; 5 Carmody-Wait, New York Practice, Interpleader, § 46, p. 238; *Matter of Scharf,* 178 Misc. 1012, 1014–1015 [FOLEY, S.].)

The fact that the money held in escrow was not paid into court but retained by the escrowee, coupled with a tender by the pleading to pay it into court, is of no consequence. CPLR

1006, the general interpleader section expressly provides for such alternative (*id.*, subd. [g]). The escrowee merely stands in place of the court so long as the court or the interpleaded parties permit him. The same practice was authorized under the Civil Practice Act (§ 286, subd. 2; see 2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1006.15).

*Matter of Garfield* (14 N Y 2d 251) is not applicable. There the problem was whether the creation of a new and optional forum to establish a claim to a debt available at law and enforcible only by a general money judgment would deprive the defender against such a claim of his right to a jury trial. This case does not involve a new forum or optional proceeding. Moreover, a specific fund is involved, the claims to which in the present posture of that fund are not adjudicable at law, and which must result in a judgment not enforcible as a money judgment by general execution.

The conclusion is supported by the statutory language and structure and the nature of the remedies provided; it is not necessary, therefore, to resort to the tortuous historical basis of interpleader as a ground for denying a right to a jury trial, albeit that too is available, as the treatises establish.

Accordingly, I dissent and vote to reverse and deny the consolidated motions to strike the action from the nonjury calendar and to place it on the jury calendar.

BOTEIN, P. J., VALENTE and EAGER, JJ., concur with STEVENS, J.; BREITEL, J., dissents in opinion.

Order, entered on October 9, 1964, affirmed, with $30 costs and disbursements to respondents.