*810 OPINION OF THE COURT
Donald J. Corbett, Jr., J.
Claimant Daniel J. Langevin[1] has been a voluntary admittee to the Rochester Psychiatric Center (RPC) since at least March 1, 1991. According to the claim, he began to complain of pain to his face, jaw and eye on or about February 22, 1995, which allegedly went untreated resulting in an infection of the brain requiring, inter alia, several surgeries. His claim is for damages for personal injuries resulting from the alleged negligence and medical and dental malpractice of the personnel of RPC. Defendant’s answer contains a counterclaim pursuant to Mental Hygiene Law § 43.03 for the cost of the various services provided to claimant at RPC from March 1, 1991 to February 28, 1997, after allowing for Medicare, in the net amount of $1.4 million plus, supplemented in May of 2001 to $1.7 million plus.
Claimants’ motion seeks partial summary judgment dismissing defendant’s counterclaim as an impermissible contingent counterclaim. Defendant’s cross motion seeks summary judgment on its counterclaim, and claimants’ cross motion seeks leave to amend their reply to add new affirmative defenses. Each of these motions will be discussed individually.
Claimants’ initial motion seeks a dismissal of defendant’s counterclaim under state law.[2] The defendant’s counterclaim is for the costs of services admittedly rendered to the claimant by RPC. Pursuant to Mental Hygiene Law § 43.01, no person may be denied services because of an inability or failure to pay a fee. Sections 43.01 and 43.03 require the commissioner to establish fees for these services, and liability for these fees is imposed on the patient, among others. Section 43.07 provides the various procedures which may be utilized to collect these fees. While nothing in this section specifically authorizes the use of a setoff for the purpose of collecting these fees, it has been held “that the Comptroller possesses the authority to do so as a function of his constitutional and statutory duty to audit all vouchers before payment.” (Matter of Carlon v Regan, 98 AD2d 544, 546 [1984], affd as mod 63 NY2d 1011 [1984].) The State’s current policy of seeking payment for the services provided by the Department of Mental Hygiene by way of a *811 counterclaim in negligence or malpractice actions brought by the patient against the State has been upheld (see, Siegel v Surles, 239 AD2d 115 [1997] [affirming on the reasoning of Justice LebedefFs unpublished decision], appeal dismissed 90 NY2d 934 [1997]; Genao v State of New York, 178 Misc 2d 512 [1998]).
Claimants seek a dismissal of the State’s counterclaim on the basis of a decision rendered by the United States District Court for the Eastern District of New York in Brown v Stone (66 F Supp 2d 412 [1999]). In Brown, the District Court held that counterclaims for payment of services provided by the Department of Mental Hygiene in malpractice and negligence actions against the State constitute impermissible contingent counterclaims because such counterclaims were contingent on the success of the underlying negligence or malpractice action and, as a matter of state law, contingent counterclaims are proscribed. In reaching this decision, the District Court relied, in part, on Geddes v Rosen (22 AD2d 394 [1965], affd 16 NY2d 816 [1965]), which noted that a counterclaim must be sufficient to support an independent cause of action against the plaintiff in the same capacity in which plaintiff sues. The District Court went on to reason that the “ability to pay” is a condition precedent to liability under the Mental Hygiene Law and that the State effectively has no independent cause of action because the plaintiffs are indigent[3] and, therefore, the State cannot meet its burden of proving that the plaintiffs had the ability to pay (see, Brown v Stone, 66 F Supp 2d 412, 431 [1999], supra, citing In re Mangan’s Will, 83 NYS2d 393 [1948]). The District Court’s reasoning in this regard is misplaced. A brief review of the legislative history of the Mental Hygiene Law will hopefully clarify this situation.
Former section 24 of the Mental Hygiene Law contained both contribution and recovery provisions. Historically, a contribution statute authorizes a department which provided care or assistance to compel current contribution from the patient or from a responsible relative. Such provisions generally contain the proviso that the patient or relative could be compelled to contribute only if possessed of sufficient ability to do so during the period when the care or assistance was furnished. *812 Indeed, subdivision (4) of former section 24 of the Mental Hygiene Law, the contribution provision, contained such a proviso.[4]
In contrast, recovery statutes authorize a department to recover from a patient or responsible relative who may not have been possessed of sufficient ability at the time the care or assistance was rendered but who later came into assets. Recovery statutes are intended to permit recovery from windfalls, such as personal injury recoveries or inheritances (see, Matter of Colon, 83 Misc 2d 344 [1975]). Subdivision (6) of former section 24 of the Mental Hygiene Law permitted the commissioner to bring an action against the patient if s/he was later found to be holding assets. Similar to other recovery statutes, there was no proviso requiring the patient to have been of sufficient ability at the time the care or assistance was rendered.
In 1972, the Mental Hygiene Law was recodified. The District Court in Brown v Stone (66 F Supp 2d 412, 431 [1999], supra) states that sections 43.03 and 43.07 of the recodified Mental Hygiene Law have been construed as being recovery statutes and references Matter of Seelen (87 Misc 2d 360 [1976], supra). Nothing in Seelen supports this conclusion. In Seelen, the Surrogate’s Court actually concluded that article 43 of the Mental Hygiene Law was a contribution statute which purportedly authorizes the department to compel current contribution from the patient or a responsible relative. The Surrogate’s Court, while correctly noting that section 43.03 (a) of the recodified Mental Hygiene Law omitted the requirement of the former statute’s contribution provision (former § 24 [4]) that contribution may only be compelled from persons who were of sufficient ability to pay, concluded that the ability to pay was nonetheless to be read into all contribution statutes.
With respect to the recovery provision of the former law (§ 24 [6]), the Surrogate’s Court in Seelen incorrectly stated that this provision was repealed when the Mental Hygiene Law was recodified, but concluded that this repeal was not intended by the Legislature and that sections 43.03 and 43.07 of the recodified law should be construed, as intended, to permit recovery by the department (see, Matter of Seelen, 87 Misc 2d 360, 364, 365 [1976], supra).
Contrary to this conclusion of the Surrogate’s Court in Seelen, the recovery provisions of the former Mental Hygiene Law *813 were not repealed when the law was recodified; rather, subdivision (6) of former section 24 was merely replaced by sections 43.03 and 43.07 of the recodified law (see, derivation table for the 1972 recodification of the Mental Hygiene Law attached to defendant’s mem of law as part of exhibit A). Moreover, the legislative committee’s memorandum recommending the recodification bill indicates that no change in the prior law was intended:
“[Article 43] contains the provisions for reimbursement and collection of fees for services rendered to patients at Department facilities. It is substantially similar to existing provisions of MHL except that the specific reference of MHL § 24(5) to a family court proceeding to compel support is deleted.” (1972 McKinney’s Session Laws of NY, at 3289, attached to defendant’s mem of law as exhibit A.)
Interestingly, it was this legislative memorandum as cited above which led the Third Department in State of New York v Ross (109 AD2d 937 [1985]) to state that the omission from section 43.03 (a) of the financial ability requirement was inadvertent and to conclude that the ability of a spouse to pay for the state hospital fees of his or her spouse was an element which the State was required to establish to meet its burden of proof (see, State of New York v Ross, 109 AD2d 937, 938 [1985], supra). This decision was relied upon by the District Court in Brown v Stone (66 F Supp 2d 412, 431 [1999], supra) for its conclusion that the ability to pay was a condition precedent to liability under section 43.03 (a) of the Mental Hygiene Law. Ross, however, involved a claim by the State for contribution from a patient’s spouse and the Third Department therein merely read into the present statute that portion of the contribution provision of former section 24 that sufficient ability to pay was a requirement for contribution from a responsible relative. This is not the present situation. Rather, the State herein is seeking recovery by way of a setoff in its counterclaim from an asset of the claimant, his underlying personal injury action for negligence and medical malpractice. This is more closely aligned with the recovery provision as it existed under former section 24, which had no ability to pay requirement. In this context, it has been held that financial ability to pay was not a condition precedent to any liability (see, In re Mangan’s Will, 83 NYS2d 393 [1948], supra; Matter of Ruderman, 266 App Div 935 [1943]). Thus, while the separate provisions of the former Mental Hygiene Law regarding contribution and *814 recovery may have been merged in the recodified law, it is apparent that the distinctions and separate requirements of each remain under the current law.
I therefore conclude that the decision of the District Court in Brown v Stone (66 F Supp 2d 412, supra) was erroneous insofar as it held that the State’s counterclaim for the cost of providing services to the claimant constituted an impermissible contingent counterclaim under New York law. In my opinion, the Brown court wrongly reasoned that the ability to pay is a condition precedent for the State to maintain such a counterclaim and the ability to pay is contingent upon the success of the underlying action. Because I have concluded that this holding is incorrect, I decline to follow it. Any other conclusion would undermine other provisions of the Mental Hygiene Law which state that the patient is liable for the fees for services rendered (§ 43.03 [a]), that the department shall charge fees (§ 43.01 [a]), that acceptance of less than the full fee does not release a patient from liability for payment of the full fee (§ 43.03 [b]), and that the commissioner may collect bills not paid by the enforcement of liens and the initiation of lawsuits (§ 43.07 [b]), and undermine New York State decisional law which has upheld the use of a counterclaim in negligence or malpractice actions against the State to seek payment for services provided (see, Siegel v Surles, 239 AD2d 115 [1997] [affirming on the reasoning of Justice LebedefFs unpublished decision], appeal dismissed 90 NY2d 934 [1997], supra; Genao v State of New York, 178 Misc 2d 512 [1998], supra; Carlon v Regan, 98 AD2d 544 [1984], affd as mod 63 NY2d 1011 [1984], supra).
Finally, nothing in CPLR 3019 undermines my decision to decline to follow Brown v Stone (66 F Supp 2d 412 [1999], supra). Pursuant to CPLR 3019 (a), a “counterclaim may be any cause of action in favor of one or more defendants * * Like its predecessor, former Civil Practice Act § 266, CPLR 3019 (a) eliminates all of the historic limitations on setoffs and recoupments (Weinstein-Korn-Miller, NY Civ Prac (] 3019.02; Getlan v Hofstra Univ., 41 AD2d 830 [1973], appeal dismissed 33 NY2d 646 [1973]). The State Comptroller has a common-law right of setoff to collect a debt owed to the State, even where the State’s claim has not been reduced to a judgment or when the setoff is unrelated to the State’s debt to the claimant (Morash v State of New York, 268 AD2d 510 [2000], lv denied 95 NY2d 755 [2000]).
The policy reason for precluding contingent counterclaims under New York law is the avoidance of unnecessary litigation. *815 Granted, if the claimant herein were to lose in the underlying negligence and malpractice action, the counterclaim portion of the trial would have been in vain. However, on its counterclaim, the State would only have to establish that the patient received care for a certain number of days and that the charges imposed were applied correctly. The incremental time associated with the proof on the counterclaim would be minimal (see, Acevedo v Surles, 778 F Supp 179 [1991]).
On the other hand, if the State were required to await a final determination of claimants’ underlying negligence and malpractice lawsuit before it could commence an action to recover the fees for the services rendered to the claimant, the task of reconstructing all of the medical records and expert testimony in such subsequent lawsuit to determine the amount of fees owed for treatment rendered before the harm complained of in the underlying action and to determine the appropriate proportion of fees incurred after the alleged harm which could validly be used to reduce the award in the underlying action would be an onerous task and a waste of judicial economy (see, Genao v State of New York, 178 Misc 2d 512 [1998], supra).
Thus, even if the State’s counterclaim was viewed as a contingent counterclaim, which I do not find, the proscription against contingent counterclaims would hardly apply in this case where the issues in the underlying action and in the counterclaim are so intermingled and where the prospect of two separate trials would engender confusion, unnecessary expense and a waste of judicial economy (see, e.g., Johnson v General Mut. Ins. Co., 24 NY2d 42 [1969]).
Based on the foregoing discussion, I hereby deny claimants’ motion for partial summary judgment dismissing the State’s counterclaim.
I will elide over the defendant’s cross motion for the moment and next address claimants’ cross motion to amend their reply to add affirmative defenses and the effect, if any, of this cross motion on claimants’ initial motion to dismiss defendant’s counterclaim. In their original reply to the State’s counterclaim, claimants allege that partial payments made by the claimants constitute a satisfaction and accord of any charges for services rendered. While the claimants do not rely on this affirmative defense in their motion to dismiss the State’s counterclaim, I summarily dismiss the validity of this affirmative defense. Section 43.03 (b) of the Mental Hygiene Law specifically provides that acceptance of less than the full amount of the fee shall not be construed to release a patient from liability for the full fee.
*816 Claimants also alleged in their original reply that the State was estopped from asserting a claim for past services based on the doctrine of laches. Once again, claimants do not rely on this affirmative defense in moving against the State’s counterclaim and, had they done so, it would have been to no avail. Estoppel requires a showing of misrepresentation and detrimental reliance. Neither has been alleged and no proof was offered to support an estoppel (see, Unadilla Silo Co. v Ernst & Young, 234 AD2d 754 [1996]). Laches has been defined as the neglect or omission to assert a right which because of the lapse of time operates as a bar in a court of equity. The essential element of this equitable defense is delay prejudicial to the opposing party (Matter of Schulz v State of New York, 81 NY2d 336 [1993]). Claimants do not allege that the State delayed in asserting its counterclaim or that they were in any way prejudiced by any delay.
In their cross motion, claimants seek leave to amend their reply to add two new affirmative defenses. While leave to amend is to be freely granted, it is not appropriate to grant leave when the proposed amendment is without merit (Razey v Wacht, 281 AD2d 941 [2001]). By way of the first new affirmative defense[5] which claimants seek to add, it is alleged that the claimant lacked sufficient funds to pay at the time services were rendered and that the State should be estopped from asserting a contingent counterclaim. This affirmative defense is without merit because it is obviously based on Brown v Stone (66 F Supp 2d 412 [1999], supra), which I have previously discounted.
The final affirmative defense which claimants seek leave to add to their reply is the generic defense that the counterclaim fails to state a cause of action. At this juncture, I can only suppose that claimants once again intended to rely on the decision in Brown (supra), which is unavailing, to support their assertion that no cause of action was stated, for surely if claimants had another basis for alleging that the counterclaim fails to state a cause of action, they would have elucidated this defense in support of their motion to dismiss the State’s counterclaim.
Because I have denied claimants’ motion to dismiss the State’s counterclaim and, in so doing, have specifically rejected the substance of the affirmative defenses the claimants seek leave to add to their reply, I deny claimants’ cross motion for leave to amend their reply.
*817 The remaining motion is the State’s cross motion for summary judgment on its counterclaim for services rendered by way of an offset against any damages awarded to the claimant in his underlying action. In support of its cross motion, the State proffers the affidavit by John A. Killilea, Jr., Deputy Treasurer of the Office of Mental Health, who attests that the claimant was billed for the services he received in amounts authorized by the Mental Hygiene Law and that partial payments were made against these charges. Attached to Killilea’s affidavit is an updated verified claim showing the amounts charged and the amounts due after the application of credits from Medicare Part B and from the claimant’s personal account. Claimants do not factually refute the validity of the amounts charged in the original reply or in the proposed amended reply. As a result, the State is entitled to summary judgment on its cross motion in an amount not to exceed the amount of any award in the underlying lawsuit for services rendered between March 1, 1991 and February 28, 1997, when the alleged negligence and malpractice occurred, less the amount of credits previously applied to this time period. A determination as to the exact amount of this setoff cannot be calculated at this time because the proof submitted does not show how much of the credits from Medicare Part B and from claimant’s personal account were applied to the fees for this limited period of time. The State is also entitled to an offset for the proportion of the fees for services rendered after February 28, 1997, which in no way relate to the alleged negligence or malpractice (Genao v State of New York, 178 Misc 2d 512 [1998], supra). An exact determination of this portion of the offset must await a review of the medical records and the testimony of the experts to be presented during trial. Judgment hereon is not to be entered pending final determination of the underlying claim.
In summary, I deny claimants’ motion for partial summary judgment dismissing the State’s counterclaim, grant the State’s cross motion for summary judgment on its counterclaim, with judgment held until the underlying claim is finally decided, in an amount to be determined during trial on the underlying claim, and deny claimants’ cross motion for leave to amend their reply to the State’s counterclaim.

. All references in this decision to claimant shall refer to Daniel J. Langevin, unless specified otherwise.

. While claimants’ papers reference a “chilling effect” as an unconstitutional consequence they claim will result if defendant’s counterclaim is allowed to stand, they specifically deny that their motion is based on constitutional grounds and rely solely on New York law.

. Claimant alleges that he is indigent. The State, however, challenges this conclusion and submits an affidavit of John A. Killilea, Jr., Deputy Treasurer of the Office of Mental Health, who states that the claimant was billed for the services he received at RPC and that he made partial payments of those fees.

. See Matter of Seelen (87 Misc 2d 360 [1976]) for a more detailed discussion of the recodification of the Mental Hygiene Law.

. While this is the first new affirmative defense, it is styled as the third affirmative defense in claimants’ proposed amended reply.